Ladd, L.
1. Physicians: unlawful. practice: indictment. Before the trial defendant objected to the indictment on three grounds: (1) For that it did not charge any offense under the laws of this State, (2) it was so indefinite as not to inform the accused of the charge against him, and (3) it attempted to charge several distinct and separate offenses. Though inartistically drawn, it is not open to any of these criticisms. It specifically alleges that the defendant practiced medicine, then averred his acts which eon *228 stituted so doing, and that this was without a certificate from the proper authorities. It may be that the acts were' set out with more particularity than was essential, but at the most this amounted to no more than pleading evidence. Section 2580 of the Code provides that “ any person who . . . shall practice medicine, surgery, or obstetrics in this State without first having obtained and filed for record ” a certificate from the State Board of Medical Examiners, shall be punished. Section 2579 of the Code declares that “ any person shall be held as practicing medicine, surgery or obstetrics, or to be a physician, within the meaning of this chapter, who shall publicly profess to be a physician, surgeon, or obstetrician, and assume the duties, or who shall make a practice of prescribing or of prescribing and furnishing medicine for the sick, or who shall publicly profess to cure or heal.” Here follow certain exceptions not involved in this case. The evident object of the pleader was to allege acts of the accused which would bring him within the definition of the section last quoted. To accomplish this the indictment alleges (1) that he publicly professed to cure and heal by means of a system unknown to the grand jury; (2) that he advertised so to do in a certain newspaper; (3) that he maintained an office with the sign of a doctor for this purpose; and (4) that he actually undertook to cure and heal. These acts are not charged as separate offenses, but as contemporaneous acts which considered together constituted the practice of medicine. The indictment as it alleged but the one offense, and .pointed out the person accused, was sufficient. Section 5290, Code.
2 Medical terms: judicial notice: evidence. II. Dr. Efime testified that “ Dunglisson’s Medical Dictionary, Revised Edition,” is accepted by the medical profession as authority in the definition of words, and thereupon the definition of “ anatomy,” “ neurology,” “ ophthalmology,” “ pathology,” and a phySi0;[0gy ” contained therein were introduced in evidence, over defendant’s objection. Even *229 though the court might have taken judicial notice of the meaning of these words it was not error to receive a standard medical dictionary in evidence, as an aid to the memory and understanding of the court. Cook v. State, 110 Ala. 40 (20 So. 360); see Nix v. Hedden, 149 U. S. 304 (13 Sup. Ct. 881, 37 L. Ed. 745); State v. Main, 69 Conn. 123 (37 Atl. 80, 61 Am. St. Rep. 30, 36 L. R. A. 623); note to Lanfoar v. Mesteir, 89 Am. Dec. 663; Bixby v. Ry. Co., 105 Iowa, 293, and like cases are not in point. They hold that medical works, treating of the symptoms and cure of disease, are not admissible, not that standard authorities may not be received as proof of the meaning of medical terms.
3. Practice of medicine: constitution-statutes. III. The considerations now urged by counsel against the constitutionality of the statutes were pressed upon the court’s attention when State v. Heath, 125 Iowa, 585, was decided. See, also, State v. Bair, 112 Iowa, 466. We are not inclined to reconsider .the conclusions reached in these decisions.
4 Profession to cure: evidence. IV. Complaint is made of the sixth paragraph of the charge. It has the support of State v. Heath, supra, and State v. Edmunds, 127 Iowa, 333. Instructions must be construed with reference to the evidence introduced, and when this is done no valid objection appears to that given.
The evidence established the defendant’s guilt. True, he modestly ascribed to nature the healing of all diseases, and merely-claimed to discover and remove the causes so as to give nature a chance. To accomplish this he proposed to “ stop the leaks in the nervous system and repair the damages done, by methodical rest and dietetics.” In a long creed, criticising the treatment of diseases by physicians generally, published in a local paper, he announced himself “ the master mechanic of the human body ” and added: “ The system I practice is taught in but one .school in the world, and I am a graduate of that school.” And pro *230 ceeded: “ If your organs are not all working properly, call on a master mechanic who will remove the cause. If there is a leak of power, he stops it. If there is pressure on some of the shaftings (or nerves), causing a hot box (or pain), he removes it. If the right fuel has not been used, he orders the right kind, and if the fireman does not know how to fire, he teaches him or her the business.” And, after quoting a letter said to have been received from a patient, he said: “I do not claim to be a specialist on tuberculosis any more than a great many (in fact almost all) so-called diseases that the medical men and other specialists have not been able to do much for in the way of curing, this system gives a permanent cure. We prefer those who have tried other systems. In that way we prove the system I practice ■is the best because we get good results. We do not care much what your troubles are, if you want to get well and stay well. Dr. J. G. Wilhite, 5261/2 Central Avenue. Fort Dodge, Iowa.” This was a public profession to cure and heal. State v. Heath, supra. Publishing his card as “ doctor of neurology and ophthalmology ” was also a public profession that.he was a physician and, this, with the assumption of duties as such, by advising patients how to care for themselves, so that nature might effect a cure, constituted practicing medicine within the meaning of the statute. See O’Neil v. State, 3 L. R. A. (N. S.) 762, and note.
5 Practice of medicine: unequal operation of the law. V. Appellant complains that if he be adjudged guilty there are others equally so, and many are enumerated who, as counsel seems to think, must come beneath the ban of the law. It will be time enough to determine each case when it reaches us, and should some .. n ., , escape it may aiiord the accused some consolation to reflect that also at the fall of the tower of Siloam those who escaped were quite as great sinners as the eighteen who were crushed beneath its walls. At any rate, the zeal *231 of the prosecutor was not misdirected in the case at bar. The “ doctor” left the farm in 1902 and, after studying at the “ Northern Illinois College of Ophthalmology and Otology ” two months, was awarded the degree of “ doctor of optics.” He then pursued a correspondence course in the same school during the summers of 1902 and 1903, and became entitled to a “ master diploma ” tipon the payment of $10. Thereafter, he took a “ regular course ” of three months at the “ McCormick Neurological College,” and became a “ Doctor of Neurology ” March 1, 1905. Aside from this he has read several articles in the magazines, and a couple of works on. the eye. No argument is required to demonstrate that his preparation was utterly inadequate, and that his pretensions savored of the charlatan and impostor. Even though familiar with his alleged “ system ” he could not have been reasonably proficient in those subjects essential to the appreciation of physical conditions to be affected by treatment. The design of the law is not to render any mode of treatment whatsoever unlawful, but that every one, before he shall undertake to prevent, cure, or alleviate disease and pain as an occupation, shall have some knowledge of the nature of disease, its origin, its anatomical and physiological features, its causative relations, and of the preparation and action of drugs. Experience has shown that this is necessary for the protection of the people against fraud and empiricism. No one is thereby deprived of the opportunity to exploit his “ system.” All exacted is that, before undertaking to do so by applying it to the functions of life, he shall be possessed of that degree of knowledge and skill required by the statute of all, and evidenced by a certificate from the proper officers of the State.
The judgment is affirmed.