STATE OF IOWA v. L. M. ADKINS, Appellant.

**Criminal law:** PHYSICIANS: PRACTICE WITHOUT LICENSE: EVIDENCE.
1  On this prosecution for undertaking to treat persons affected
   with disease and of publicly professing to cure and heal without
   a license, the evidence is reviewed and held sufficient to sustain
   a conviction.

**Same:** CONSTITUTIONAL LAW.  The statutes prohibiting the practice
2  of medicine without a license are constitutional.

**Same:** MEDICAL EXAMINATION.  Where one accused of practicing
3  medicine without a license manifested no willingness to take an
   examination, as required by statute, but attempted to practice
   without license, he can not complain of the action of the secre-
   tary of the board of medical examiners in advising him with
   respect to taking the examination.

*Appeal from Poweshiek District Court.*—HON. BYRON W.
PRESTON, Judge.

THURSDAY, FEBRUARY 10, 1910.

THE defendant appeals from conviction of having un-
dertaken to treat persons afflicted with disease and of pub-
licly professing to cure and heal without a license.—
*Affirmed.*

*J. H. Patton,* for appellant.

*H. W. Byers,* Attorney-General, and *Chas. W. Lyon,*
Assistant Attorney-General, for the State.

LADD, J.—Prior to having attained his majority, the
accused had led a bucolic life, and thereupon entered the

Carson College of Psychic-Sarcology in Missouri. Three
years were devoted to the study of psoychol-

1. CRIMINAL
LAW: phy-
sicians: prac-
tice without
license: evi-
dence.

ogy, neurology, hygiene, dietetics, biology,
anatomy, diagnosis, and actual practice.
Having passed a thorough examination upon
all branches appertaining to the science of "Vital Heal-
ing," he was granted a' "diploma," and the degree of "Doc-
tor of Vital Science" conferred upon him. Equipped with
"all the rights and privileges pertaining to said degree,"
he returned to his father's house, with the benevolent de-
sign of curing "all diseases without drugs, medicines, or
surgical operations." Quite naturally he first directed his
attention to the appendix, insisting that "no part of the
body is useless, but it takes all and every part to make up
the perfect machine." In the local newspapers he wrote
eloquently of the wrongs perpetrated by modern surgery,
and directed attention to his "own peculiar methods" of
healing by "natural laws." "When people learn," said he,
"what appendicitis really is, they will understand that the
removal of the vermiform appendix by a surgical operation
is a crime against nature. Then surgical operations will be
abandoned and rank thereafter as a cruel and barbarous
practice—the outgrowth of ignorance and stupidity. The
life forces of a human being is like an electric machine,
controlled and governed by fixed and unerring laws. . . .
Appendicitis as well as most every kind of disease yields
very readily to the Vital Science treatment, which seeks
nature's laws and works in harmony with them. This
treatment is applied by Dr. L. M. Adkins' own peculiar
methods and there are evidences of remarkable cures. For
testimonials and other information call on or address Dr.
Adkins, office 1209 Summer St. 'Phone No. 4566."

Later on, in sympathetic exaggeration, he again under-
took to turn people from the surgeon's knife to "Vital
Science Institute . ` . . where all manner of diseases
are treated successfully. . . . Surgical operations to

remove the appendix have been a costly experiment to humanity. Not only has the sufferer been subject to the torture of the surgeon's knife, from which many never recover, but, should life be continued, a recent discovery of medical experts shows that eighty percent of those who survive the operation for appendicitis afterwards go hopelessly insane. This hitherto unthoughtof calamity will bring sorrow and regret to the homes of thousands of the survivors of this terrible operation. While people are suffering and dying with appendicitis, the news is being carried to all parts of the country of the new method of treatment known as Vital Science, which cures appendicitis in almost every case. This method of treatment uses neither drugs nor surgical operations, but is in perfect harmony with nature's laws. There is a place in this city where the Vital Science treatment is given, known as the Vital Science Institute, where all manner of diseases are treated successfully. For further information call on or write Dr. L. M. Adkins, office 1209 Summer St. Grinnell, Iowa. 'Phone No. 4566." He testified that he had treated several patients, and thus described his method: "Our system of treatment is by manipulation, stimulating the nerve centers so as to increase their vital force, the action of the blood and also the action of the muscles and all of the organs of the body, stimulating them up to their normal action by physical contact." Enough has been said to indicate that the young man, even though a genius in the healing art, has both publicly professed and undertaken to heal and cure the afflicted, and, as this was without first having procured a license from the state board of medical examiners, he was rightly convicted of practicing without a license, unless the statutes relating to the practice of medicine or the acts of said board be declared in contravention of the Constitution.

Before the opening of the "Institute," however, these statutes had been upheld as in no wise inimical to the

fundamental law. *State v. Bair*, 112 Iowa, 466; *State v.*
*Heath*, 125 Iowa, 585; *State v. Edmunds*,

**2. SAME: constitutional law.**  127 Iowa, 333. And later were enforced in
a case somewhat like that at bar. *State v.*
*Wilhite*, 132 Iowa, 226. Most of the points raised in argument are disposed of in the recent case of *State v. Miller*
(Iowa), 124 N. W. 167.

The accused had some correspondence with the secretary of the state board of medical examiners, explaining to him the course he had taken in school and was furnished a

**3. SAME: medical examination.**  blank application to fill out and file. The
secretary also warned him to quit practicing,
and informed him that only graduates in
recognized schools of medicine and of osteopathy were
eligible for examination. What the secretary did is denounced by counsel for appellant as the arbitrary action of
the board. That body, however, did not pass on appellant's
application for an examination, nor did he make any on
the form provided for that purpose. Indeed, his testimony
discloses that he was not proficient in all the subjects on
which the state board of examiners is required to examine
candidates for certificates to practice. See section 2576,
·Code. As noted in the several decisions above cited, the
real test applicable to all alike is that of qualification. The
General Assembly has declared the subjects in which those
who undertake to practice the healing art shall be proficient,
and, as the subjects named have some relation thereto, and
this is a legislative function, the courts will not interfere.
Upon demonstrating qualification in the several subjects
enumerated a certificate is issued, and armed with this evidence of qualification any method of healing may be pursued. The accused had manifested no willingness to undergo an examination such as the law exacted, and for this
reason is not in a situation to complain of the action of the
board of medical examiners as an impediment to his prosecution. The judgment is *affirmed.*