LOCKE *v.* IONIA CIRCUIT JUDGE.

1. CONSTITUTIONAL LAW—PHYSICIANS AND SURGEONS—PRACTICE OF
   MEDICINE—CRIMINAL LAW—AMENDMENT TO STATUTE—TITLE OF
   ACT.
   The amendment of Act No. 237, Pub. Acts 1899, passed in
   1913, Act No. 368, Pub. Acts 1913, defining the practice
   of medicine to mean the actual diagnosing, curing or re-
   lieving in any degree, or professing or attempting to
   diagnose, treat, etc., by attendance, prescribing, or. manip-
   ulation, exceeds the power of the legislature in that
   it attempts to render criminal any acts of kindness to
   or relief of the suffering, as an amendment to an act
   which related to the examination, regulation, licensing,
   and registration of physicians and surgeons: but ·in so
   far as the original act applies to practicing medicine and
   regulates the same it is valid and is not open to the
   objection of unconstitutionality because it attempts to
   include persons engaged in the practice of chiropractic or
   drugless healing.

2. SAME—CRIMINAL LAW—TREATMENT OF DISEASES.
   Under the police power of the State it is competent for
   the legislature to regulate and control the examination
   and licensing of persons engaged in healing and in the
   medical profession or the treatment and cure of ailments
   and diseases, so that an information based upon the act
   of 1899 regulating physicians and surgeons, and charg-
   ing the respondent with practicing as a chiropractor with-
   out complying with the requirements of the law, was
   sufficient and should not have been quashed upon the
   motion of the accused. The information was good irre-
   spective of any amendments to the law.

3. SAME—TITLE OF ACT—LICENSING PHYSICIANS.
   The title of Act No. 237, Pub. Acts 1899 (2 How. Stat. [2d
   Ed.] § 5108 *et seq.*), sufficiently covers the practice of
   medicine or it is suggested by the reference to regulation
   and licensing of physicians, etc., in said act; and the re-
   spondent, a chiropractor, engaged in the treatment of dis-
   eases by manipulation of the spine and muscles of the back,
   was within the prohibition of the statute.

4. SAME—DUE PROCESS OF LAW—FEDERAL CONSTITUTION—CRIMINAL
   LAW—LICENSING CHIROPRACTORS.

> It is within the police power also to license and regulate
> the practice and treatment of diseases and to protect the
> citizens from fraudulent or improper claims on the part
> of persons who pretend to practice the profession;—such
> legislation does not interfere with the unalienable right
> of a citizen to employ whomsoever he chooses as his
> physician. The qualifications of persons who hold them-
> selves out as qualified to cure diseases is within the
> province of the legislature to regulate or license.[1]

Mandamus by Alfred R. Locke, prosecuting attor-
ney of the county of Ionia, against Frank D. M. Davis,
judge of the circuit court, to require respondent to
set aside an order quashing the information in a
prosecution against one D. J. Healey. Submitted Jan-
uary 19, 1915. (Calendar No. 26,312.) Writ granted
March 17, 1915.

*Grant Fellows*, Attorney General, and *Alfred R.
Locke*, Prosecuting Attorney, for relator.

*Hawley & Eldred*, for respondent.

STEERE, J. In this proceeding relator seeks by
mandamus to compel respondent to set aside an order
quashing an information filed in the circuit court of
Ionia county charging one D. J. Healey with having
from the 15th of August, 1913, to the 23d of March,
1914, wilfully and illegally engaged in the practice of
medicine in the city of Belding in violation of the pro-
visions of Act No. 237, Pub. Acts 1899, and acts amend-
atory thereto.

The record discloses a complaint, warrant, arrest,
preliminary examination before a magistrate, and hold-

---

[1] For the application of statutes regulating practice of medi-
cine to persons giving special kinds of treatments, see notes in
3 L. R. A. (N. S.) 762; 24 L. R. A. (N. S.) 103; 25 L. R. A.
(N. S.) 1297, and 33 L. R. A. (N. S.) 179. ·
  Upon the constitutionality of regulations as to practice, see
note in 14 L. R. A. 581.

ing for trial in the circuit court according to the regular course of procedure in criminal prosecutions, followed by filing this information, arraignment in the circuit court, refusal to plead, the entry of a plea of not guilty by order of the court, and, when the case was brought on for trial, a motion to quash said information and discharge the accused because of the invalidity of the act under which it was filed, which motion was granted.

The record does not contain any testimony taken on the preliminary examination, and the only official information as to what the accused actually did, aside from practicing medicine without a license in violation of the provisions of said statute, stated in phraseology purporting to follow the statute with proper allegations negativing exceptions, is that:

"The said D. J. Healey then and there wilfully and illegally did advertise and hold out to the public himself as being able to treat, cure, and alleviate human ailments and diseases, and claiming to be capable of curing diseases and human ailments, and did then and there, for hire and reward, treat for diseases, prescribe for, and advise as to health and diagnosis, and give consultation and advice as to health and disease, divers persons, and did then and there attempt to treat, cure, and relieve human diseases, ailments, defects, and complaints of physical and mental origin, by attendance, advice, appliances, manipulations, divers persons, and did then and there treat and attempt to cure of ailments and disease one Albert Hammond and divers other persons then and there consulting him, contrary to the provisions of" said act and to the form of the statute in such case made and provided, etc.

It is stated, however, in the people's brief that the prosecuting attorney admitted, at the time said motion to quash such information was presented and argued, that he did not claim, or propose any proof tending to show, that the accused made use of drugs, but would prove that he designated himself as a

"chiropractor," and engaged in the practice of the system of that so-called school; that the proofs would show that he treated his patients in attempts to cure disease and relieve suffering by manipulation of the spine and muscles of the back.

The scope of the information being accepted as settled by this concession, the trial court, after argument, granted said motion, holding the act of 1899, as amended in 1913 (Act No. 368, Pub. Acts 1913), unconstitutional, for the reasons, briefly stated, that its title, relating only to the examination, regulation, licensing, and registration of physicians and surgeons and punishment for offenders against said act, did not include nor apply to persons assuming to treat diseases by mere manipulation, without surgery or the use of drugs and medicines; that the provisions of section 9 of said act, as amended, defining the practice of medicine, is both beyond the scope of said title and unconstitutional, in the further particular that it is "unreasonable, unjust, and deprived citizens of this State of their liberty, rights, and equality before the law;" that the provisions of section 7 regarding licensing persons who claimed to cure disease otherwise than by surgery, drugs, and medicines is not only beyond the purview of said title, but in its terms "confusing, conflicting, and contradictory, insomuch as to render the law incapable of construction or enforcement as to that paragraph."

A motion to set aside the order quashing said information being denied, application was made to this court for mandamus.

The substance of the attack upon this information is that it rests upon amendments to the act of 1899, passed without changing the original title, which provide for licensing persons desiring to practice a system of treatment of human ailments without resort to drugs, medicine, or surgery, subjecting them to the punishment provided in said act for practicing

medicine without a license, and in the concluding paragraph essays to stamp them beyond question as medical practitioners by coining the following definition:

"In this act, unless otherwise provided, the term 'practice of medicine' shall mean the actual diagnosing, curing or relieving in any degree, or professing or attempting to diagnose, treat, cure or relieve any human disease, ailment, defect or complaint, whether of physical or mental origin, by attendance or by advice, or by prescribing or furnishing any drug, medicine, appliance, manipulation or method, or by any therapeutic agent whatsoever."

This sweeping effort at definition, with all provisions "otherwise" taken into account, would render criminal numerous gratuitous and humane acts of relief and kindness to the suffering common amongst mankind in all ages and places. The police power of the State, though comprehensive, is scarce adequate to compass the possibilities of such a definition, and it is difficult to discern in the title of the act any warning of a purpose to make such a definition a part of the law of this Commonwealth. That attribute of sovereignty known as "police power," though difficult of definition, includes the power of legislation deemed essential for protection of the public peace, good order, morals, safety, and health. Preservation of the public health is universally recognized as a matter peculiarly within the police power, and to that end it is competent to control, under proper legislation, the activities of those who claim especial skill or knowledge in the healing art, and who seek for gain to engage as a business in the practice of their art upon the public, to regulate such practice, to prescribe qualifications necessary to be possessed by persons making such pretensions, and to grant them licenses before they may engage in the serious business of treating human ailments as a vocation. The power

to license involves the power to prohibit and punish those attempting to practice the healing art without a license.

The title of the original act under consideration is:

"An act to provide for the examination, regulation, licensing and registration of physicians and surgeons, and for the punishment of offenders against this act, and to repeal acts and parts of acts in conflict therewith."

The amendment of 1913 refers to the original act by title and proposes to amend sections 3, 7, 8, and 9. Otherwise than as pointed out and as applied to "those persons who desire to practice (and do practice) a system of treatment of human ailments and disease without the use of drugs and medicines," the amendments of 1913 are, in detail, of slight importance here.

The respondent, against whom this information is filed, does not claim to hold or to have applied for a license under any provision of the act. He claims to be without the pale and purpose of the act as expressed in its title. His defense is that he is neither a physician nor surgeon, and does not practice medicine within any meaning of the title in question, and that, as applied to the things with which he is charged, such legislation is in any aspect unconstitutional and void, because it would operate to abridge his privileges and immunities as a citizen of the United States, to deprive him of his property—the right to earn—without due process of law, and thus denies him equal protection under the law.

The issue here is the validity of this information. It turns, in our opinion, upon the two questions of whether that with which the accused is charged can, in common acceptation and as generally construed by the courts, be regarded as engaging in the "practice of medicine," and whether the title of the act is sufficiently broad to include the same. If so, the informa-

tion is good under the original act, irrespective of the amendments.

In *Reetz* v. *Michigan*, 188 U. S. 505, 23 Sup. Ct. 390, appealed from this court (*People* v. *Reetz*, 127 Mich. 87 [86 N. W. 396]), in an opinion written by Justice Brewer, it is said:

"The power of a State to make reasonable provisions for determining the qualifications of those engaging in the practice of medicine, and punishing those who attempt to engage therein in defiance of such statutory provisions, is not open to question. *Dent* v. *West Virginia*, 129 U. S. 114 (9 Sup. Ct. 231); *Hawker* v. *New York*, 170 U. S. 189 (18 Sup. Ct. 573), and cases cited in the opinion; *State, ex rel. Burroughs*, v. *Webster*, 150 Ind. 607 (50 N. E. 750, 41 L. R. A. 212), and cases cited."

Does the title of this act cover and apply to the practice of medicine? It is not so stated in express language, and respondent contends that:

"The act is not one for the regulation of the practice of medicine, but is an act for the regulation of physicians and surgeons."

The act is not only one to regulate, but to examine, register, and license, them. The police power to license, as indicated in said title, is the recognized power to authorize persons to engage in vocations which need special surveillance without which they would not be permitted. The object of this act would be no more clearly expressed if it proposed to provide for licensing physicians and surgeons to practice medicine and surgery. An act to license a class of persons designated by their trade, profession, or business is commonly understood to mean, and can only mean, to authorize and legally qualify them to pursue the vocation or business which the identifying names used necessarily point out. The subject-matter of this statute is fairly stated and indicated by its

title to be physicians and surgeons in the pursuit of their calling—the practice of medicine and surgery—and it distinctly suggests the purpose of the act to be surveillance of such vocation, by examination, registration, license, and regulation. Auxiliary details and collateral provisions depending upon, and germane to, the principal purpose are by rule included, and need not be enumerated at length. The words "persons practicing medicine" are held to be synonymous with "physician" in *Harrison* v. *State*, 102 Ala. 170 (15 South. 563).

It needs no citation of authority to sustain the proposition that practicing medicine, surgery, and the healing art generally or professing to heal the afflicted in any manner by any means as a vocation for hire are related subjects, ostensibly to the same end, naturally affecting one way or the other, and germane to the public health.

In recognition of such relation, although somewhat conversely to the question here, it was held in *People* v. *Phippin*, 70 Mich. 6 (37 N. W. 888), that under a law entitled "An act to promote the public health," a statute prescribing conditions for practicing medicine and punishment of violators was sustained, though by a divided court, and respondent, who claimed to be a "magnetic healer," and treated the sick for pay according to his so-called system, without complying with the statute, was held properly convicted of unlawfully engaging in the practice of medicine.

We are unable to discern any material difference in scope and meaning between this title and the titles of similar laws in other States passed "to regulate the practice of medicine" dealing with the various activities of those who, assuming special skill and knowledge in the treatment of disease, engage in such work for profit, and which, under such titles, provide for their examination as to qualifications, registration,

and license to practice, with resulting punishment for those offending against such provision.

The original act of 1899 and the amendment of 1913 both make it a misdemeanor to practice medicine or surgery in this State without complying with the provisions of the act, the amendment including also advertising in any form or holding one's self out "to the public as being able to treat, cure or alleviate human ailments or disease." We conclude that regulation of the practice of medicine, as construed in *People* v. *Phippin, supra,* and the great weight of more recent authority in other courts, is a provision fairly related to and naturally suggested by the title in question.

That the practice of various systems of drugless healing which have been devised and exploited from time to time, the respective merits of which the courts cannot and do not assume to decide, is to be regarded as practicing medicine, has been held in the following States and decisions, as well as many others therein cited, and every feature of the many questions raised so thoroughly analyzed and discussed that any attempt to go over them here in detail would be superfluous duplication: *Bragg* v. *State,* 134 Ala. 165 (32 South. 767, 58 L. R. A. 925) (osteopathy); *Little* v. *State,* 60 Neb. 749 (84 N. W. 248, 51 L. R. A. 717) (osteopathy); *State* v. *Pollman,* 51 Wash. 110 (98 Pac. 88) (osteopathic and magnetic); *People* v. *Gordon,* 194 Ill. 560 (62 N. E. 858, 88 Am. St. Rep. 165) (magnetic healing in the nature of osteopathy); *State* v. *Wilhite,* 132 Iowa, 226 (109 N. W. 730, 11 Am. & Eng. Ann. Cas. 180) (neurology and ophthalmology); *State* v. *Yegge,* 19 S. D. 234 (103 N. W. 17, 69 L. R. A. 504, 9 Am. & Eng. Ann. Cas. 202) (ophthalmology, or fitting eyeglasses); *State* v. *Adkins,* 145 Iowa, 671 (124 N. W. 627) (vital science); *State* v. *Marble,* 72 Ohio St. 21 (73

N. E. 1063, 70 L. R. A. 835, 106 Am. St. Rep. 570, 2 Am. & Eng. Ann. Cas. 898) (Christian Science for pay); *Witty* v. *State*, 173 Ind. 404 (90 N. E. 627, 25 L. R. A. [N. S.] 1297) (suggestive therapeutics); *O'Neil* v. *State*, 115 Tenn. 427 (90 S. W. 627, 3 L. R. A. [N. S.] 762) (functional ray treatment); *Parks* v. *State*, 159 Ind. 211 (64 N. E. 862, 59 L. R. A. 190) (magnetic healer); *Milling* v. *State* (Tex. Cr. App.) (150 S. W. 434) (manipulation); *State* v. *Johnson*, 84 Kan. 411 (114 Pac. 390, 41 L. R. A. [N. S.] 539) (chiropractic); *State* v. *Miller*, 146 Iowa, 521 (124 N. W. 167) (chiropractic); *State* v. *Smith*, 233 Mo. 242 (135 S. W. 465, 33 L. R. A. [N. S.] 179) (chiropractic); *People* v. *Allcutt*, 117 App. Div. 546 (102 N. Y. Supp. 678) (mechano-neural therapy).

The substance of conclusions reached in this line of authority upon the scope of medical practice is comprehensively expressed in *Commonwealth* v. *Jewelle*, 199 Mass. 558 (85 N. E. 858), as follows:

"It would be too narrow a view of the practice of medicine to say that it could not be engaged in in any case or class of cases otherwise than by prescribing or dealing out a substance to be used as a remedy. The science of medicine, that is, the science which relates to the prevention, cure, or alleviation of disease, covers a broad field, and is not limited to that department of knowledge which relates to the administration of medicinal substances. It includes a knowledge, not only of the functions of the organs of the human body, but also of the diseases to which these organs are subject, and of the laws of health and the modes of living which tend to avert or overcome disease, as well as of the specific methods of treatment that are most effective in promoting cures. It is conceivable that one may practice medicine to some extent, in certain classes of cases, without dealing out or prescribing drugs or other substances to be used as medicines. It is conceivable that one may do it in other ways than those practiced as a part of their respective systems, by either 'osteopathists, pharmacists, clairvoyants, or persons practicing

hypnotism, magnetic healing, mind cure, massage cure science, or the cosmopathic method of healing.' "

We are not unmindful of the authorities to the contrary of the foregoing views, some of which can be distinguished by reason of special statutory provisions in their jurisdictions, and others which cannot, but an examination of the many decisions upon the subject which that fruitful source of litigation has demanded leads clearly to the conclusion that the great weight of authority and soundest reasoning sustains the views voiced in the cases cited. In the State of New York, *Smith* v. *Lane,* 24 Hun, 632, a leading case to the contrary, has been overruled by *People* v. *Allcutt, supra.* The comparatively early case of *People* v. *Phippin, supra,* plainly aligned this State with those "refusing to restrict the practice of medicine to the administration of drugs or the use of surgical instruments," and, although then rendered less binding as a controlling precedent by a division of the court, it has not since been questioned, but on the contrary, both cited with approval by this court and strengthened as an authority by abundant and carefully reasoned decisions in other jurisdictions.

As to other constitutional questions raised, touching the inalienable rights of the accused as a citizen to equal protection under the law, etc., we are well satisfied that not only is the abundant authority elsewhere conclusive to the contrary of the contentions made, but the subject is fully and finally disposed of in *People* v. *Reetz,* 127 Mich. 87 (86 N. W. 396), referring in strong approving terms to the *Phippin Case* as follows:

"Notwithstanding the former decision of this court in *People* v. *Phippin,* 70 Mich. 6 (37 N. W. 888), counsel again attack the constitutionality of this legislation. That case settled the question against the contention of the respondent. See, also, *People* v. *Moor-*

184 Mich.—35.

*man,* 86 Mich. 433 (49 N. W. 263). Counsel argue that such legislation is an interference with the inalienable right of a citizen when ill to employ anybody he chooses as his physician. This contention is not supported by authority or reason. The practice of medicine affects the public health, and it is clearly within the police power of the State to provide that those dealing with disease shall be amply qualified to do so, so far as human experience and education may qualify them.  *  *  *  This legislation has been almost universally sustained by the courts of other States and the Supreme Court of the United States. Among the cases are the following, which we cite without further comment: *State* v. *Dent,* 25 W. Va. 1, affirmed in *Dent* v. *West Virginia,* 129 U. S. 114 (9 Sup. Ct. 231) ; *State* v. *Webster,* 150 Ind. 607, 50 N. E. 750 [41 L. R. A. 212], and authorities there cited."

As before suggested, the validity of this information is not contingent upon the legality of provisions relative to licensing in the amended act. That it is within the police power of the State and the scope of the title to so provide, or not, in the discretion of the legislature, we are well satisfied. Neither can the court concern itself with whether "the system of treatment practiced by chiropractors is a separate, systematic, coordinated, and arranged branch  *  *  *  which has firmly established its worth," or merely of the class of alleged methods of treatment without proved merit, often skillfully heralded with extravagant assurances and new-coined names as a thing inspired for the healing of the nations, to which the sick and afflicted searching a cure in their extremity are prone to harken with credulity. Those questions are for the legislative, and not for the judicial, branch of this government. The defendant is charged with, and has claimed, the skill and right to practice as a profession for profit his system of healing. It may be all he claims for it, but it is a calling directed to the serious business of treating human ailments

for the purpose of restoring the sick to health, and directly related to public health, to protect which is peculiarly within the police power of the State. We are not prepared to say that the exercise of that power by this legislation is unwise or unreasonable.

For these reasons, we conclude that the case should have been permitted to proceed to trial under the information filed, and the order quashing said information should be set aside.

Writ granted.

BROOKE, C. J., and MCALVAY, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.