PEOPLE v. WATSON.

PHYSICIANS AND SURGEONS—VIOLATION OF STATUTES—INFORMATION
—SUFFICIENCY.

An information under Act No. 237, Pub. Acts 1899, as
amended by Act No. 368, Pub. Acts 1913 (2 Comp. Laws
1915, § 6724 *et seq.*), defining what acts constitute the
practice of medicine, charging that respondent "unlaw-
fully did engage in the business of practice of medicine,
and did practice medicine, within the meaning of Act
No. 237 of the Public Acts of the State of Michigan for the
year 1899, and the amendments thereto, without before so
doing having complied with the provisions of said act"
and its amendments, "that is to say, without being then
and there the lawful possessor of a certificate of regis-
tration or license issued by the board of registration in
medicine," etc., is bad because the general words em-
ployed do not fully set forth all of the assignments neces-
sary to constitute the offense; the subject-matter is de-
fined by the statute by descriptive words not employed in
the information; and a person may innocently do some
things embraced in the definition given in the statute.

Exceptions before judgment from the superior
court of Grand Rapids; Dunham, J. Submitted June
15, 1916. (Docket No. 131.)   Decided May 31, 1917.

J. Alton Watson was convicted of unlawfully engag-
ing in the practice of medicine. Reversed and de-
fendant discharged.

*Edward N. Barnard,* Prosecuting Attorney, and *Wil-
liam K. Chute,* Assistant Prosecuting Attorney, for the
people.

*C. G. Turner,* for defendant.

OSTRANDER, J.   The information alleges that re-
spondent on July 22, 1914, and—

"on divers days and times between that day and the 28th day of July, 1914, at the city of Grand Rapids, in the county of Kent aforesaid, unlawfully did engage in the business of practice of medicine, and did practice medicine, within the meaning of Act No. 237 of the Public Acts of the State of Michigan for the year 1899, and the amendments thereto, without before so doing having complied with the provisions of said act" and its amendments; "that is to say, without being then and there the lawful possessor of a certificate of registration or license issued by the board of registration in medicine," etc.

The exceptions mentioned in the act are negatived. Motion was made to quash the information, upon the grounds that (1) it charged no offense; (2) the act relied upon defines the term "practice of medicine," and (3) the statutory elements of the defense are not set out, nor any specific acts of respondent, nor (4) any description of the offense, within the meaning and intent of the statute. The motion was overruled, and the objection preserved and insisted upon by various motions made during the progress of the trial. Expressing grave doubts concerning the sufficiency of the information, the trial court permitted testimony to be taken, and a verdict was returned. Other exceptions are relied upon, but, as I think the information bad, they need not be referred to.

The information is bad because (1) the general words employed therein do not fully set forth all of the assignments necessary to constitute the offense; (2) the subject-matter of the offense is now defined by the statute by descriptive words, none of which are employed in the information; (3) a person may innocently do things embraced within the definition given in the statute. In *People* v. *Phippin*, 70 Mich. 6 (37 N. W. 888), respondent was charged with violating Act No. 167, Pub. Acts 1883, and specifically with advertising and holding himself out to the public as authorized to practice medicine, and that he did practice

medicine without the statute qualifications. The act did not define the term "practice medicine" or "practice of medicine," and did provide (section 6) that:

"Whoever advertises or holds himself out to the public as authorized to practice medicine or surgery in this State, when in fact he is not so authorized under the provisions of this act, shall be deemed guilty of a misdemeanor. * * *"

It was held that the offense stated and defined in section 6 of the act was alleged in the complaint. In *White* v. *Lapeer Circuit Judge,* 133 Mich. 93 (94 N. W. 601) (a complaint made under Act No. 237, Pub. Acts 1899), the charge was in the words of the statute, and was held to be sufficient, upon the authority of *People* v. *Phippin, supra.*

Act No. 237, Pub. Acts 1899, was amended by Act No. 368, Pub. Acts 1913 (2 Comp. Laws 1915, § 6724 *et seq.*), so as to define the practice of medicine. Under former legislation it had been left to the courts to define—piecemeal, it is true, but nevertheless to define—what was the practice of medicine, by determining whether the proven acts of the person accused of violating the statute amounted to practicing medicine. The legislature undertook to make an exclusive and inclusive definition by enacting:

"In this act, unless otherwise provided, the term 'practice of medicine' shall mean the actual diagnosing, curing or relieving in any degree, or professing or attempting to diagnose, treat, cure or relieve any human disease, ailment, defect or complaint, whether of physical or mental origin, by attendance or by advice, or by prescribing or furnishing any drug, medicine, appliance, manipulation or method, or by any therapeutic agent whatsoever." (2 Comp. Laws 1915, § 6732.)

Here are the elements of the statute offense, a catalogue of the acts constituing "practice of medi-

cine," the doing of which makes the actor liable to the statute penalty. Under such an act, to charge one generally with "practicing medicine" is not to sufficiently charge him with a wrongful act. Moreover, as will be pointed out, the foregoing statute definition is itself limited by the title of the act and the measure of the police power of the State. Some things within this statute category may be innocently done. In *Locke* v. *Ionia Circuit Judge*, 184 Mich. 535, 539 (151 N. W. 625), this court, speaking by Mr. Justice STEERE, said:

"This sweeping effort at definition, with all provisions 'otherwise' taken into account, would render criminal numerous gratuitous and humane acts of relief and kindness to the suffering common amongst mankind in all ages and places. The police power of the State, though comprehensive, is scarce adequate to compass the possibilities of such a definition, and it is difficult to discern in the title of the act any warning of a purpose to make such a definition a part of the law of this commonwealth."

And (184 Mich. at page 540 [151 N. W. at page 625]):

"The issue here is the validity of this information. It turns, in our opinion, upon the two questions of whether that with which the accused is charged can, in common acceptation and as generally construed by the courts, be regarded as engaging in the 'practice of medicine,' and whether the title of the act is sufficiently broad to include the same. If so, the information is good under the original act, irrespective of the amendments."

The information in that case charged that the respondent did advertise and hold out to the public himself as being able to treat, cure, and alleviate human ailments and diseases, and claiming to be capable of curing diseases and human ailments, and did then and there, for hire and reward, treat for diseases, prescribe for and advise as to health and diagnosis, and

give consultation and advice as to health and disease, divers persons, and did then and there attempt to treat, cure, and relieve human diseases, ailments, defects, and complaints of physical and mental origin, by attendance, advice, appliances, manipulations, divers persons, and did then and there treat and attempt to cure of ailments and disease one Albert Hammond and divers other persons then and there consulting him. The people did not claim that respondent made use of drugs, but that he designated himself a "chiropractor," engaged in practicing the system of that so-called school, treating his patients by manipulation of the spine and the muscles of the back. The opinion proceeds upon the theory that this was the scope of the information.

It will be at once perceived that the information before us may or may not charge respondent with committing an offense, in view of the definition of "practice of medicine" found in the act and the proper scope of the act, as evidenced and limited by its title; because, since the act has been sustained as valid upon certain limitations of the definition, it is no longer sufficient to charge one with engaging in the business of practicing and with practicing medicine, contrary to the provisions of the statute—the law having been held valid only when applied to such acts enumerated therein as "in common acceptation and as generally construed by the courts" are regarded as engaging in the "practice of medicine." The rule that in indictments and informations for offenses created by statute it is sufficient to describe the offense in the words of the statute, and that where the words of the statute are descriptive of the offense it is safe to follow the language there used, is a rule which has not been observed by the pleader, since the descriptive words found in the present statute are not used in the information. See Tiffany's Criminal Law (3d Ed.), p.

365; *Enders* v. *People*, 20 Mich. 233; *Hall* v. *People*, 43 Mich. 417 (5 N. W. 449); *People* v. *Quider*, 172 Mich. 280 (137 N. W. 546); *People* v. *Kennedy*, 176 Mich. 384 (142 N. W. 771, Am. & Eng. Ann. Cas. 1916A, 895). Moreover, so long as a person may innocently do some things embraced within the definition given in this particular statute, there is additional reason for particularity of statement of the acts committed in order to apprise the accused of the charge sought to be brought against him.

"The rule that an indictment for a statutory misdemeanor is sufficient, if the language of the statute is used in charging the offense, is limited to cases where such words fully set forth all the assignments necessary to constitute the offense intended to be punished without uncertainty or ambiguity." Joyce on Indictments, § 389.

I am of opinion that the motion to quash the information should have been granted. It follows that the verdict should be set aside, and the respondent discharged.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., took no part in the decision.