DEPARTMENT OF CONSUMER AND INDUSTRY SERVICES v
HOFFMANN

Docket No. 201322. Submitted March 18, 1998, at Lansing. Decided June 5,
1998, at 9:00 A.M.

The Office of Health Services, Bureau of Occupational and Profes-
sional Regulation, Department of Consumer and Industry Services,
issued a notice and order to Mark H. Hoffmann, a licensed chiro-
practor, that directed him to cease and desist from manipulating
the spines of horses. A hearing referee proposed that the Board of
Chiropractic Disciplinary Subcommittee issue a decision upholding
the cease and desist order. The hearing referee decided that the
manipulation of horses' spines is within the scope of veterinary
medicine, not chiropractic, and that Hoffmann had not worked
under the supervision of a veterinarian such that he could lawfully
manipulate horses' spines. The disciplinary subcommittee invali-
dated the cease and desist order, accepting the factual findings of
the hearing referee, but disagreeing with the hearing referee's con-
clusions of law. The disciplinary subcommittee determined that no
statutory or administrative rule limits the practice of chiropractic
to humans and that Hoffmann's manipulation of horses' spines is
within the scope of chiropractic. The department appealed.

The Court of Appeals *held*:

1. The practice of chiropractic, as defined by the Public Health
Code, MCL 333.16401(1)(b); MSA 14.15(16401)(1)(b), is limited to
the diagnosis and adjustment of spinal misalignments in humans.
Although § 16401(1)(b)(i) and (ii) do not expressly limit references
to spinal sublaxations or misalignments to human spines,
§ 16401(1)(b)(iii) does so when referring to the use of x-ray
machines. It would be illogical to interpret § 16401(1)(b)(i)-(iii) as
allowing a chiropractor to diagnose and adjust spinal sublaxations
and misalignments in humans and animals but limiting a chiroprac-
tor's use of x-ray machines to humans. Furthermore, prior statutory
definitions of "chiropractic practice" limited chiropractic to treat-
ment of humans.

2. The veterinary medicine provisions of the Public Health Code
define "animal" to exclude humans, MCL 333.18802(2); MSA
14.15(18802)(2), and define the "practice of veterinary medicine" to

include performing an operation or manipulation on an animal, MCL 333.18805(2)(a); MSA 14.15(18805)(a), and diagnosing or prognosing a disease, deformity, or defect in an animal by manipulation, MCL 333.18805(2)(c); MSA 14.15(18805)(2)(c). Hoffmann's manipulation of horses' spines constitutes veterinary medicine.

3. A person licensed as a chiropractor, but not as a veterinarian, may manipulate animal spines under a licensed veterinarian's supervision. MCL 333.16215(1); MSA 14.15(16215)(1). The term "supervision," as defined by the Public Health Code, MCL 333.16109(2); MSA 14.15(16109)(2), does not encompass the kind of informal availability of a veterinarian through a pager that Hoffmann had in this case.

Reversed and remanded.

1. HEALTH — CHIROPRACTIC — SCOPE OF PRACTICE.

The practice of chiropractic is limited by statute to the diagnosis and adjustment of spinal misalignments in humans (MCL 333.16401[1][b]; MSA 14.15[16401][1][b]).

2. ANIMALS — VETERINARY MEDICINE — SPINAL MANIPULATIONS.

The diagnosis and adjustment of spinal misalignments in animals other than humans constitute the practice of veterinary medicine (MCL 333.18802[2]; MSA 14.15[18802][2]).

3. ANIMALS — SPINAL MANIPULATIONS — CHIROPRACTORS — VETERINARIANS.

A person licensed as a chiropractor, but not as a veterinarian, may, under the supervision of a licensed veterinarian, diagnose and adjust spinal misalignments in animals others than humans; such supervision must comply with the provision in Article 15 of the Public Health Code that defines "supervision" (MCL 333.16109[2], 333.16215[1]; MSA 14.15[16109][2], 14.15[16215][1]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Howard C. Marderosian*, Assistant Attorney General, for Department of Consumer and Industry Services.

*Holly Glazier*, for Mark H. Hoffman.

Before: HOEKSTRA, P.J., and JANSEN and GAGE, JJ.

JANSEN, J. The Department of Consumer and Industry Services appeals as of right from the Board of Chiropractic Disciplinary Subcommittee's dismissal of a

cease and desist order entered by the Office of Health Services (within the Bureau of Occupational and Professional Regulation) against Mark Hall Hoffmann, D.C. The cease and desist order required that appellee stop performing chiropractic manipulation on animals. We reverse the order of the disciplinary subcommittee and remand.

Appellee became a licensed chiropractor in 1990. As part of his practice, appellee, who does not have a veterinary license, provides chiropractic treatment to horses. On September 1, 1995, the department issued to appellee a notice and order to cease and desist. The notice alleged that appellee was in violation of the Public Health Code[1] because he was treating horses by manipulating their spines without having a veterinary license. On September 25, 1995, appellee requested a hearing, and the hearing was held on February 26, 1996. The hearing referee issued a proposal for decision on March 7, 1996. The hearing referee concluded that because the care and treatment of animals is not specifically included in the scope of chiropractic and is specifically included in the scope of practice for veterinarians, the practice of equine chiropractic by a chiropractor who is not a veterinarian is outside the scope of chiropractic and is illegal. The hearing referee also concluded that appellee was not being supervised by a veterinarian such that appellee's manipulation of horses' spines could be done pursuant to MCL 333.16109(2); MSA 14.15(16109)(2).

After the parties filed their responses to the hearing referee's proposal for decision, the disciplinary sub-

---

[1] Specifically, the chiropractic statute is found at MCL 333.16401 *et seq.;* MSA 14.15(16401) *et seq.*

committee dismissed the cease and desist order on September 27, 1996. Although it accepted the hearing referee's factual findings, the disciplinary subcommittee disagreed with the hearing referee's reasoning. The disciplinary subcommittee ruled that there was no specific statutory or administrative rule limiting or including equine chiropractic care for either a chiropractor or a veterinarian. It also found that MCL 333.16401; MSA 14.15(16401) did not limit the practice of chiropractic to humans. Therefore, the disciplinary subcommittee found that there was no statutory violation by appellee because he was merely performing spinal manipulation, which is within the scope of chiropractic. The department moved for rehearing and reconsideration, but that motion was denied in an order dated January 27, 1997.

The sole issue on appeal is whether the scope of chiropractic as defined in MCL 333.16401; MSA 14.15(16401) authorizes chiropractors, who do not have veterinary licenses, to treat animals. We hold that the scope of chiropractic does not include the treatment of animals. We, therefore, reverse the decision of the disciplinary subcommittee because the decision is based on a substantial and material error of law. MCL 24.306(1)(f); MSA 3.560(206)(1)(f).

Because the scope of chiropractic is statutorily defined, the question whether a given activity is within the authorized scope of chiropractic is one of statutory construction to be decided by the court. *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 67; 535 NW2d 529 (1995). "Practice of chiropractic" is defined in MCL 333.16401(1)(b); MSA 14.15(16401)(1)(b), which provides:

"Practice of chiropractic" means that discipline within the healing arts which deals with the nervous system and its relationship to the spinal column and its interrelationship with other body systems. Practice of chiropractic includes:

(i) Diagnosis, including spinal analysis to determine the existence of spinal subluxations or misalignments that produce nerve interference, indicating the necessity for chiropractic care.

(ii) The adjustment of spinal subluxations or misalignments and related bones and tissues for the establishment of neural integrity utilizing the inherent recuperative powers of the body for restoration and maintenance of health.

(iii) The use of analytical instruments, nutritional advice, rehabilitative exercise and adjustment apparatus regulated by rules promulgated by the board pursuant to section 16423, and the use of x-ray machines in the examination of patients for the purpose of locating spinal subluxations or misaligned vertebrae of the human spine. The practice of chiropractic does not include the performance of incisive surgical procedures, the performance of an invasive procedure requiring instrumentation, or the dispensing or prescribing of drugs or medicine.

The disciplinary subcommittee determined that the above statutory provision does not specifically limit the practice of chiropractic to humans, except for § 16401(1)(b)(iii) providing for the use of x-ray machines. The disciplinary subcommittee concluded that the definition of chiropractic was not limited to the human nervous system or spinal column.

This case requires us to construe a statutory provision. The "cardinal rule" of statutory construction is to identify and give effect to the intent of the Legislature. *Shallal v Catholic Social Services of Wayne Co,* 455 Mich 604, 611; 566 NW2d 571 (1997). The first step in determining intent is to examine the language of the statute itself. *Id.* The language is to be given its ordinary and generally accepted meaning. *Id.* Judicial

construction is authorized only where the language lends itself to more than one interpretation. *Id.*

Subsections 1(b)(i) and 1(b)(ii) authorize the diagnosis and adjustment of spinal subluxations and misalignments in terms not explicitly limited to human spines, while subsection 1(b)(iii) specifically authorizes the use of x-ray machines for the purpose of locating spinal subluxations or misaligned vertebrae of the human spine. The disciplinary subcommittee's interpretation of the statute would permit a chiropractor to diagnose and adjust spinal subluxations and misalignments in humans and animals, while limiting a chiropractor's use of x-ray machines to humans. We believe that this interpretation would lead to an illogical result, which is disfavored when construing statutes. *Gross v General Motors Corp*, 448 Mich 147, 164; 528 NW2d 707 (1995) (statutes must be construed to prevent absurd or illogical results and to give effect to their purposes). This is because it would be unreasonable or illogical to allow chiropractors to diagnose and adjust spinal misalignments in animals while allowing the use of x-rays only in the examination of humans.

Moreover, the disciplinary subcommittee's interpretation ignored all prior statutory definitions of chiropractic that explicitly limited all aspects of the practice of chiropractic to humans. As noted in the department's brief, the practice of medicine was first regulated by the Legislature with 1899 PA 237, which created the medical practice board. In 1913, the Legislature recognized drugless healers for the first time and granted the Board of Medicine the authority to certify and regulate such individuals. 1913 PA 368. The 1913 amendments provided "for licensing persons

desiring to practice a system of treatment of human
ailments without resort to drugs, medicine, or sur-
gery." *Locke v Ionia Circuit Judge,* 184 Mich 535, 538;
151 NW 623 (1915). The Board of Chiropractic was
then created in 1933. Specifically, 1933 PA 145
defined the practice of chiropractic as:

> Sec. 6. The license provided for in this act shall entitle
> the holder thereof to practice chiropractic in the state of
> Michigan, and for the purpose of this act chiropractic is
> defined as "the locating of misaligned or displaced verte-
> brae of the human spine, the procedure preparatory to and
> the adjustment by hand of such misaligned or displaced ver-
> tebrae and surrounding bones or tissues".

In 1968, the Legislature amended the definition of chi-
ropractic as:

> Sec. 6. The license provided for in this act shall entitle
> the holder thereof to practice chiropractic in the state of
> Michigan, and for the purpose of this act chiropractic is
> defined as "the locating of misaligned or displaced verte-
> brae of the human spine, the procedure preparatory to and
> the adjustment by hand of such misaligned or displaced ver-
> tebrae and surrounding bones or tissues, for the restoration
> and maintenance of health." A licensed doctor of chiroprac-
> tic under this act may use x-ray and such analytical instru-
> ments as are approved by the Michigan board of chiroprac-
> tic examiners in the examination of patients solely for the
> purpose of locating misaligned or displaced vertebrae of the
> human spine and for the procedures preparatory thereto.
> [1968 PA 73.]

The Public Health Code, the present statutory sys-
tem, was enacted in 1978. See 1978 PA 368. Although
the present definition of the practice of chiropractic
was expanded by the 1978 amendments, there is noth-
ing in the Public Health Code indicating that the prac-

tice of chiropractic includes animals other than humans. See *Attorney General v Beno*, 422 Mich 293, 317; 373 NW2d 544 (1985) ("There is nothing in this wording [of § 16401] which shows an intent to authorize the treatment of areas other than the human spine."). Rather, the Public Health Code expands the practice of chiropractic by including the nervous system, its relationship to the spinal column, and its interrelationship with other body systems. The expanded definition of practice of chiropractic also includes the use of analytical instruments, nutritional advice, rehabilitative exercise, and adjustment apparatus in the examination of patients to locate spinal subluxations or misaligned vertebrae of the *human spine*. See § 16401(1)(b)(iii).

Additionally, the legislative history indicates that the Legislature did not intend to expand the practice of chiropractic to include animals. Senate Fiscal Agency Analysis, HB 4070 (1978), states in relevant part:

> Following lengthly [sic] deliberation in the House which resulted in a compromise, the chiropractic scope of practice was expanded to include "the nervous system and its relationship to the spinal column and its interrelationship with other body systems;" diagnosis including spinal analysis; establishment of neural integrity utilizing the inherent recuperative powers of the body for restoration and maintenance of health; nutritional advice; and rehabilitative exercise. The new scope of practice specifically excludes "the performance of incisive surgical procedures, the performance of an invasive procedure requiring instrumentation, or the dispensing or prescribing of drugs or medicine."

Therefore, in light of the legislative history, and the wording of § 16401(1)(b), we find no legislative intent

to allow chiropractors to perform spinal diagnosis and adjustments on animals. The disciplinary subcommittee's finding to the contrary is a substantial and material error of law, and we concur with the hearing referee's conclusion that a chiropractor who is not a licensed veterinarian does not have the authority to practice chiropractic on horses or other animals.

In *Beno, supra,* p 303, our Supreme Court stated:

> [T]he purpose of the licensing statute is not to prohibit the doing of those acts that are excluded from the definition of chiropractic, but to make it unlawful to do without a license those things that are within the definition. In other words, appellant's activities are not automatically enjoinable merely because they are not within the scope of chiropractic practice. Rather, an injunction is only proper, under article 15 of the Health Code, upon a finding that the practices complained of constitute a "violation" of a statute or rule promulgated under article 15. MCL 333.16291(1); MSA 14.15(16291)(1). An obvious example of enjoinable activities are those that constitute the practice of medicine where the actor is without a medical license to do so. MCL 333.17001(c); MSA 14.15(17001)(c).

Veterinarians are also regulated under the Public Health Code. MCL 333.18801 *et seq.*; MSA 14.15(18801) *et seq.* "Animal" is specifically defined as an animal other than a human being. MCL 333.18802(2); MSA 14.15(18802)(2). Practice of veterinary medicine is defined as:

> (a) Prescribing or administering a drug, medicine, treatment, or method of procedure; performing an operation or *manipulation*; applying an apparatus or appliance; or giving an instruction or demonstration designed to alter an animal from its normal condition.

(b) Curing, ameliorating, correcting, reducing, or modifying a disease, deformity, defect, wound, or injury in or to an animal.

(c) Diagnosing or prognosing, or both, a disease, deformity, or defect in an animal by a test, procedure, *manipulation*, technique, autopsy, biopsy, or other examination. [MCL 333.18805(2); MSA 14.15(18805)(2) (emphasis added).]

Therefore, appellee's action of performing spinal adjustments on horses is contemplated by the statutes regulating veterinary medicine. This lends further support to finding that the Legislature did not intend for chiropractors to practice chiropractic on animals. Further, to this extent, the cease and desist order was properly entered to enjoin appellee from performing chiropractic manipulation on horses or other animals without having a license to practice veterinary medicine. MCL 333.16291(1); MSA 14.15(16291)(1).

We lastly address the issue whether appellee was properly under the supervision of a veterinarian such that he could lawfully perform chiropractic adjustments on horses. A veterinarian may delegate the authority to practice equine chiropractic to a chiropractor as long as the chiropractor is qualified by education, training, or experience where the act is done under the veterinarian's supervision. MCL 333.16215(1); MSA 14.15(16215)(1). MCL 333.16109(2); MSA 14.15(16109)(2) provides:

"Supervision", except as otherwise provided in this article, means the overseeing of or participation in the work of another individual by a health professional licensed under this article in circumstances where at least all of the following conditions exist:

(a) The continuous availability of direct communication in person or by radio, telephone, or telecommunication

between the supervised individual and a licensed health professional.

(b) The availability of a licensed health professional on a regularly scheduled basis to review the practice of the supervised individual, to provide consultation to the supervised individual, to review records, and to further educate the supervised individual in the performance of the individual's functions.

(c) The provision by the licensed supervising health professional of predetermined procedures and drug protocol.

The hearing referee found, as a factual matter, that appellee was not under a veterinarian's supervision as statutorily defined. This factual finding is supported by the record. Horse owners were usually, but not always, referred to appellee by a veterinarian. Dr. John Haberline, a licensed veterinarian, had referred horse owners to appellee and Dr. Haberline was available to appellee by a pager. The hearing referee found, correctly we believe, that "the informal availability described by Dr. Haberline does not meet the [statutory] requirement for supervision." Therefore, appellee does not have the authority to practice equine chiropractic under MCL 333.16215(1); MSA 14.15(16215)(1) because he is not being "supervised" as that term is defined in MCL 333.16109(2); MSA 14.15(16109)(2).

The disciplinary subcommittee's order to dismiss the notice and order to cease and dismiss is reversed. We remand to the disciplinary subcommittee to enter an order that appellee shall not perform chiropractic diagnosis and adjustment of animals without having a license to practice veterinary medicine, unless appellee is properly under the supervision of a licensed veterinarian as defined in MCL 333.16109(2); MSA 14.15(16109)(2).