THE STATE OF IOWA, Appellant, v. J. WILSON EDMUNDS, Appellee.

1 **Itinerant physician:** INDICTMENT.  An indictment charging a nonresident with professing to cure diseases by dieting his patients, prescribing exercises and furnishing eye glasses, and with going from place to place attempting to cure diseases for a consideration without having procured a license, states facts constituting an offense under Code, section 2581, relating to itinerant physicians.

2 **Indictment:** DUPLICITY.  An indictment charging an offense under Code, section 2581, relating to itinerant physicians, is not bad for duplicity on the ground that it also charges an offense under section 2580 referring to the practice of medicine without a certificate, where there is no allegation that defendant had no certificate.

3 **License to practice medicine.**  The practice of medicine is not a right, but a privilege, upon which the state may impose such license tax as it may see fit.

Legislative act: TITLE. The title of an act "Of the practice of
4  medicine" is broad enough to include a provision requiring
   itinerant physicians to pay a license.

Statutes: CONSTITUTIONALITY. Although the license imposed on
5  itinerant physicians by Code, section 2581, should be treated as
   a tax, the section is not in conflict with the article of the consti-
   tution providing that every law imposing a tax shall state its
   purpose and the object to which it is to be applied.

*Appeal from Wright District Court.*— HON. J. H. RICHARD,
Judge.

THURSDAY, NOVEMBER 17, 1904.

DEFENDANT was indicted for practicing medicine as an
itinerant physician without a license. He demurred to the
indictment, and his demurrer was sustained, and the case
dismissed. The State appeals.— *Reversed.*

*Charles W. Mullan,* Attorney-General; *Lawrence De
Graff,* Assistant Attorney-General, and *Sylvester Flynn,*
County Attorney, for the State.

*David Evans,* for appellee.

DEEMER, C. J.— The indictment charges that the de-
fendant, a nonresident of the State of Iowa, did willfully,
unlawfully, and feloniously practice medicine, and assume
the duties of and publicly profess to be a phy-
sician, and did then and there unlawfully at-
tempt and profess to treat, heal, and cure dis-
eases, injuries, and ailments by certain appliances and
methods, namely, by dieting his patients, causing them to
take certain exercises, and to wear glasses or spectacles which
he furnished; that the said J. Wilson Edmunds did then
and there go from house to house, from place to place, and
by circular letters and advertisements solicit persons to meet
him at other places than his office at the place of his resi-
dence for treatment, and did, for a money consideration,

1. ITINERANT
   PHYSICIANS:
   indictment.

while so practicing as an itinerant physician, treat and attempt to cure and heal diseases, injuries, and ailments; and that the said defendant did not then have, and has never, procured from the State Board of Medical Examiners, a license authorizing him to practice medicine or surgery as an itinerant physician within the State of Iowa, neither has he ever applied for or paid for such a license. The material parts of the statutes (Code 1897) on which it is based read as follows: Section 2579 defines "physician," "practice of medicine," etc., as follows: "Any person shall be held as practicing medicine, surgery or obstetrics or to be a physician within the meaning of this chapter who shall publicly profess to be a physician, surgeon or obstetrician, and assume the duties, or who shall make a practice of prescribing or of prescribing and furnishing medicine for the sick, or who shall publicly profess to cure or heal." This section also contains this further provision: "But it shall not be construed to apply to physicians as herein defined who have been in practice in this State for five consecutive years." Section 2580 provides a penalty to be imposed upon "any person who shall practice medicine, surgery or obstetrics in the State without first having obtained and filed for record the certificate therein required." Section 2581 defines an "itinerant physician" as follows: "Every physician practicing medicine, surgery or obstetrics, or professing or attempting to treat, cure or heal diseases, ailments or injuries, by any medicine, appliance or method, who goes from place to place, shall be considered an itinerant physician." This section also provides for a license fee of $250 per annum, the same being payable into the State treasury for the use of the State of Iowa. Such license may issue only to such as hold a certificate from the State Board of Medical Examiners. The demurrer was upon the grounds (1) that the indictment is uncertain in its terms, and bad for duplicity; (2) that the facts stated do not constitute an offense under the laws of

this State; (3) that section 2581 applies only to persons properly described as physicians, who already hold State certificates; and (4) that section 2581 does not properly come under the title, " Of the practice of Medicine."

The principal question for discussion is, do the acts charged in the indictment constitute an offense under the laws of this State? And this, of necessity, involves a construction of the statutes quoted.

The State contends that the indictment practically follows the language of section 2581, and that these statutes, properly construed, cover the case made by the indictment. The charge is that defendant, being a nonresident, assumed the duties of, and publicly professed to be, a physician, and did attempt and profess to heal and cure diseases by dieting his patients, and causing them to take certain exercises and to wear glasses furnished by him; that he went about, and in various ways solicited persons to meet him for treatment, and did, while so practicing as an itinerant physician, treat and attempt to cure injuries, diseases, etc. While he was thus charged with being an itinerant physician who was attempting to practice without a license, the means used by him for affecting cures are set out; and we have to inquire, does the doing of these things in the manner charged constitute an offense under our statutes? In arriving at a correct conclusion on this branch of the case, it may be well to quote the following from section 2594 of the Code, which related to itinerant vendors of drugs: " All those who by any method publicly profess to treat and cure diseases, injuries or deformities are to be considered itinerant vendors of drugs." This, of course, as will be observed from a reading of the entire section, applies to those who vend drugs, nostrums, ointments, or appliances of any kind for the treatment of diseases or injuries. It was not sought to convict defendant under this section, and we refer to it in order to arrive at a proper interpretation to be placed on the other statutes quoted. Defendant would not be guilty under

these sections because he sold eyeglasses for defective eyes, although he might, perhaps, be held under section 2594, although on this point we do not at this time make any pronouncement.

But the question here is, do the facts recited make defendant an itinerant physician, under sections 2579, 2580, and 2581? Section 2579 defines "physicians" and the "practice of medicine," and the allegations of the indictment clearly bring the defendant within the first and third classes of persons named therein. But it is contended that as defendant did not profess or attempt to cure by any medicine, appliance, or method similar to medicine, but by dieting his patients, etc., his acts do not come within the prohibitions of section 2581 of the Code. The question here is a narrow one, and depends wholly upon the construction to be given the words "medicine, appliance, or method." Do they mean a medicine or drug, or something administered as a medicine or drug would be? We think this is too narrow. An appliance can hardly be said to be a medicine or drug, and a method may or may not involve the administration of any substance, either internally or externally. True, when general terms follow specific words of a like nature, the general terms are presumed to embrace things and methods of the kind designated by the specific words. But for this rule to apply, it must appear that the general words are of a like nature. This, as has been observed, is not true here. Undoubtedly the State has the right to determine what acts shall constitute the practice of the healing art, and it may impose conditions on the exercise of that privilege. *State v. Mosher,* 78 Iowa, 321; *State v. Bair,* 112 Iowa, 466. Having defined the terms it uses, courts should accept the definition given, and not be too subtle in the use of refined distinctions. To save its people from quacks and charlatans, the State has plenary power to prohibit or supervise the exercise of the healing art. Statutes similar to the one in question have been enacted in many

States, and they have been held to apply to magnetic healers (*State v. Parks,* 159 Ind. Sup. 211 (59 L. R. A. 190), with notes and briefs); empirics (*Musser v. Chace,* 29 Ohio St. 577; *Nelson v. State,* 22 Ky. 438, 57 S. W. Rep. 501, 50 L. R. A. 383); obstetricians (*State v. Welch,* 129 N. C. 579, 40 S. E. Rep. 120); midwives (*People v. Arendt,* 60 Ill. App. 89); Christian scientists and osteopaths, although there is a decided conflict in the authorities as to these two classes of healing (*Little v. State,* 60 Neb. 749 (84 N. W. Rep. 248, 51 L. R. A. 717); *People v. Jones,* 92 Ill. App. 445; *State v. Buswell,* 40 Neb. 158 (58 N. W. Rep. 728, 24 L. R. A. 68); *contra, State v. Myloid,* 20 R. I. 632 (40 Atl. Rep. 753, 41 L. R. A. 428); and itinerant practitioners (*State v. Blair,* 92 Iowa, 28). See, also, *State v. Heath,* 125 Iowa, 585. Cases from other States cited and relied upon by appellee's counsel are not in point, for the reason that the statutes therein construed are not so broad as the one now before us. Our Legislature evidently intended to prohibit the practice of the healing art by the use of medicine or any kind of appliance or methods, except upon certain named conditions. The language used is very broad and comprehensive, and covers any and every kind of public profession to cure and heal by the use of any method or device. It confines the practice of medicine to the school or schools regarded as lawful, and does not permit quacks and charlatans to impose upon the public.

It may be that defendant has a certificate for the practice of his profession. As to that fact we are not advised. But whether he has or not, he had no license to practice as an itinerant physician. The charge against him is that he was so practicing without the required license, and it is unimportant to inquire as to whether or not he had a State certificate, as this would afford him no protection. There may be some doubt as to whether a nonresident may obtain this certificate, maintain his residence in another State, and practice his profession here without obtaining the additional

license required by section 2581 of the Code. But as to this we express no decided opinion at this time. The facts alleged in the indictment clearly bring the case within the prohibition of our statutes, and the demurrer should have been overruled, unless it be for some other matters which remain to be considered.

II. Appellee further argues that the indictment is bad for duplicity, in that it charges an offense under both sections 2580 and 2581. Section 2580 refers to the practice of medicine without a certificate from the State Board of Medical Examiners, and there is no charge in the indictment that defendant had no such certificate. Surely no offense is charged under this section. The claimed uncertainty is failure to charge that defendant had no such certificate, and failure to charge the practice of medicine within the terms of section 2581. Neither of these points is well taken. Except for the designation of the means used for effecting cures, the indictment is in the exact language of section 2581 of the Code, and it is sufficient.

*2. INDICTMENT: duplicity.*

III. Further, it is argued that the license tax is unreasonably high, oppressive, and prohibitive. Being in the nature of an occupation tax, the State undoubtedly had the right to fix it at such sum as it saw fit. While the practice of medicine is often spoken of as a right, it is not, strictly speaking, a right, but a mere privilege, upon the exercise of which the State may impose conditions such as it deems advisable.

*3. LICENSE TO PRACTICE MEDICINE.*

Lastly it is contended that, if the license be held to be a tax, the entire enactment is invalid, because the subject-matter is not sufficiently expressed in the title, and for the further reason that the Constitution provides that every law which imposes a tax shall state its purpose, and the object to which it is to be applied. Constitution, article 7, section 7. The first proposition is clearly without merit. The title of the act is, " Of the practice of medicine," and the subject-matter is sufficiently ex-

*4. LEGISLATIVE ACT: title.*

pressed. *State v. Forkner,* 94 Iowa, 733; *McAunich v. R. R. Co.,* 20 Iowa, 338.

Treating this license tax as within the provisions of the Constitution, we find that the tax is distinctly stated, and the object to which it is to be applied is provided for, in section 2581, which says that it shall be paid to the State Treasury for the use of the State of Iowa. Aside from this, however, it may well be doubted whether this provision of the Constitution applies to license taxes such as were here exacted. *Howland v. Chicago,* 108 Ill. 496; *Braun v. Chicago,* 110 Ill. 186; *Leavenworth v. Booth,* 15 Kan. 627; *Scottish Union Co. v. Herriott,* 109 Iowa, 606. But however this may be, the tax and the object thereof are sufficiently expressed in the act itself.

5. STATUTES: constitutionality.

The trial court was in error in sustaining the demurrer, and, for the purpose of announcing a correct rule of law for such cases, the judgment is *reversed.*