STATE OF IOWA v. GEORGE D. CORWIN, Appellant.

**Criminal law:** PRACTICE OF MEDICINE WITHOUT LICENSE: INDICTMENT: DUPLICITY. The several acts described as constituting the offense of practicing medicine without a license are enumerated disjunctively in the statute and are not necessarily inconsistent with each other, and may be alleged conjunctively in an indictment without duplicity.

**Same:** DESCRIPTION OF OFFENSE. An indictment for practicing medicine without a license which is in substantial conformity with the language of the statute and so individuates the offense that the accused is apprised of the crime charged is sufficient without specifically detailing the particular things done.

**Same:** ARRAIGNMENT: WAIVER. Where the record is silent concerning the arraignment of a defendant but discloses that he proceeded to trial without objection on that ground it will be presumed that there was an arraignment or a waiver thereof.

**Same:** FAILURE TO PLEAD. Where a defendant has had ample time to prepare his defense and the trial has proceeded as though he had pleaded not guilty, he can not take advantage of his omission to plead.

**Same:** STATUTORY REGULATION. The state may determine what acts constitute practice as a physician and may impose conditions on the extent of that privilege and the statute providing that one practicing as a physician shall possess some knowledge of the nature of disease, its origin, etc., and of the preparation and action of drugs is not an unreasonable exercise of legislative power.

**Same:** PRACTICING PHYSICIAN. One who advertises himself as undertaking to heal by manipulating the spinal column of the patient, known as the chiropractic system, is a physician within the contemplation of the statute defining who shall be deemed practicing physicians.

*Appeal from Powesheik District Court.—*HON. H. BANK, JR., Judge.

TUESDAY, JUNE 6, 1911.

THE accused was convicted of having practiced as a physician without having first obtained a license, and appeals. *Affirmed.*

*Morris & Hartwell* and *Talbott & Talbott,* for appellant.

*George Cosson,* Attorney-General, and *John Fletcher,* Assistant Attorney-General, for the State.

LADD, J.—The defendant was accused of having professed and actually undertaken to cure and heal without having obtained and caused to be recorded a certificate from the State Board of Medical Examiners; the indictment charging that he "did willfully and unlawfully assume the duties of a physician, and make a practice of treating persons afflicted with diseases and did then and there willfully and unlawfully publicly profess to cure and heal persons afflicted with disease by a system of treatment called 'chiropractic.'" He moved that the indictment be set aside for that, among other things, it was defective, in that no more than a legal conclusion was pleaded therein and several offenses were joined in a single count.

I.  Section 2579 of the Code defines who shall be deemed practicing medicine, surgery, or obstetrics or as a physician, and, as pointed out in *State v. Heath,* 125 Iowa, 585, these are divided into three classes: (1) All "who shall publicly profess to be a physician or surgeon or obstetrician and assume the duties;" (2) those "who shall make a practice of prescribing and

1. CRIMINAL LAW: practice of medicine without license: indictment: duplicity.

furnishing medicine for the sick;" and (3) those "who publicly profess to cure or heal." Section 2580 of the Code imposes a penalty on any person who by his conduct brings himself within any of these classes. So that, construing the statutes together, they enumerate several acts disjunctively which may constitute the offense of practicing as a physician without a license, and the doctrine is. well settled that "when several acts are enumerated disjunctively as constituting an offense, and are not repugnant to each other, they may be alleged conjunctively in an indictment without duplicity." *State v. Hubbell,* 137 Iowa, 570. The different acts which constitute the offense in one practicing without a license are not necessarily inconsistent with each other, and the indictment, even if it had charged the acts of the defendant such as to bring him within all three classes, would not have been vulnerable to the criticism of charging more than one offense.

Nor was there error in ruling that the facts were pleaded with sufficient particularity. These were stated, in substance, in the language of the statute, and the rule

2. SAME: description of offense.

prevails that when this so individuates the offense that the offender has proper notice from the statutory terms of the particular offense charged it is enough. *State v. Porter,* 105 Iowa, 677; *State v. Bair,* 92 Iowa, 28. See *State v. Wilhite,* 132 Iowa, 226. A specific detail of the particular things done was not essential to apprise the accused of the offense charged. It was sufficient for that purpose to allege the acts declared by the statute to constitute the offense.

II. The record does not affirmatively indicate that defendant was arraigned or waived arraignment, but from the very silence of the record and his proceeding to the

3. SAME: arraignment; waiver.

trial without objection, arraignment or waiver thereof is to be presumed. *State v. Winstrand,* 37 Iowa, 110; *State v. Bowman,* 78 Iowa, 519; *State v. Thompson,* 95 Iowa, 464.

Nor is defendant in a situation to take advantage of his omission to plead. As he was not put on trial until about two months after the motion to set aside the indict-

4. SAME: failure to plead.

ment had been overruled, ample time was afforded to prepare for his defense, and, as he was tried in every respect as though he had pleaded "not guilty," he could not have been prejudiced by the irregularity, and for this reason can not be heard to complain. *State v. Greene,* 66 Iowa, 11; *State v. Hayes,* 67 Iowa, 27; *State v. Jones,* 70 Iowa, 505; *State v. Bowman, supra; State v. Thompson, supra.*

III. Appellant next contends that the operation of the statutes should be limited to those professing or undertaking to practice medicine and surgery. The state may

5. SAME: statutory regulation.

determine what acts constitute practice as a physician, and may impose conditions on the exercise of that privilege. *State v. Mosher,* 78 Iowa, 321; *State v. Bair,* 112 Iowa, 466. And we have construed the statutes of this state to include those who without medicine or the practice of surgery publicly profess to cure and heal. *State v. Heath,* 125 Iowa, 585; *State v. Wilhite,* 132 Iowa, 226; *State v. Miller,* 126 Iowa, 541, in which the accused was a chiropractor. See *State v. Johnson* (Kan.), 114 Pac. 390. And in the opinions in these cases and *State v. Edmonds,* 127 Iowa, 333, we have held the medical practice statutes constitutional. No useful purpose will be served by reconsideration, notwithstanding the interesting brief presented by counsel for defendant.

IV. The defendant published a series of articles in the newspapers of Brooklyn and Malcolm, denominated "Talks with a Chiropractor," in which he directed pub-

6. SAME: practicing physicians.

lic attention to the so-called chiropractic system of healing, to the shortcomings of the medical profession, and especially to himself as a practicner of that system. He undertook to

heal a number of persons, and in doing so first required
them to strip the back to the skin. and lie on a table
when he would examine the spinal column with his hands,
and by sudden pressure restore any vertebrae out of place
to its normal position, or, as described by the accused:
"The patient is suspended between two tables, the chest
resting on one, the lower part of the body on the other;
and abdomen and spine between them will be in a flexed
condition, and I start with my hands to traverse the spinal
process. I take a position with my hands over the process
in this manner, and with a quick movement in this man-
ner (indicating) as I stand over the patient I seek to
move the vertebrae back towards the normal position in
order to relieve the pressure on the nerves. Subluxation
is likely to have in my opinion to cause an impingement
or pressing upon the spinal cord or process and to make
impossible the normal transmission of the mental impulses
that we ascribe to the brain, thus causing other manifesta-
tions than normal ones, causing abnormal conditions or
disease. Impingement of the vertebrae interferes with the
transmission of mental impulses or impressions. It is a
well known fact that there is some energy transmitted from
the brain over the nerves and tissues of the body, and
these are what are termed in our school as mental im-
pulses. It is supposed that the brain is the center of the
nerve force, and these impulses are transmitted over the
nerves from the brain to the tissues of the body, and their
proper transmission is necessary, in my opinion, to the
performance of the normal functions of the brain and tis-
sues."

Manifestly he not only publicly professed to cure and
heal, but undertook to do so. If the theory is of such
consequence to the world as counsel contend, it would seem
that the study such as the state requires of anatomy, physi-
ology, general chemistry, pathology, surgery, and obste-
trics would not be objectionable. Surely the requirement

that every one who proposes to devote himself to the prevention, cure, or alleviation of disease and pain shall possess some knowledge of the nature of disease, its origin, its anatomical and physiological features, its causative relation, and of the preparation and action of drugs, ought not to be denounced as exacting or unreasonable. Indeed, without such preparation, one might entertain a suspicion that the proposed healer is acting selfishly, and not from an intelligent conviction that his method was preferable to others. All the state insists upon is qualification, and, when possessed of this and armed with a certificate so evidencing and duly recorded, the practitioner may follow any system of healing he may choose.

There was no error, and the judgment is *affirmed*.