STATE OF IOWA, Appellee, v. IRA COLLINS, Appellant.

PHYSICIANS AND SURGEONS: Practice of Osteopathy—Indictment in Language of Statute—Sufficiency. An indictment for the unlawful practice of osteopathy, under Section 2583-d, Code Supplement, 1913, *drawn in the language of said statute*, to wit, "did practice osteopathy without first having obtained and filed for record the certificate required," is not vulnerable to the objection that the charge is a mere legal conclusion only.

CONSTITUTIONAL LAW: Rules of Construction—Reluctance to Invalidate Law—Noninterested Party. Courts avoid invalidating statutes unless the question whether they are valid arises for, and demands, decision. Therefore, the contention that the law governing the practice of osteopathy (Section 2583-d, Code Supplement, 1913) is unconstitutional, because arbitrarily discriminating against osteopaths, will be ignored when presented by one who earnestly contends that the treatments given by him, and on account of which he is being prosecuted, *were not an application of the science of osteopathy.*

PHYSICIANS AND SURGEONS: Certificate of Authority—Exemptions of Students—Scope. The exemption from the requirements of the Medical Practitioners Act of students of medicine, surgery or obstetrics, having prescribed but limited qualifications, and prescribing under the supervision of preceptors, does not embrace one who is engaged in healing the sick and who, on various occasions, consults with and receives medical advice from other duly authorized practitioners.

TRIAL: Instructions—Objections and Exceptions—Failure to Specifically Except—Effect. Error may not be predicated on the giving of instructions when there has been a total failure to point out specifically, and with reasonable exactness, the errors therein before the same are read to the jury, and to enter exceptions accordingly. (Sec. 3705-a, Code Supp., 1913.)

PHYSICIANS AND SURGEONS: Certificate of Authority—Practicing without Certificate—Evidence. Evidence reviewed, and held sufficient to support a verdict of guilt of practicing osteopathy without obtaining and recording the required certificate.

TRIAL: Instructions—Requested Instructions—Estoppel. One requesting an instruction on a disputed question of fact is estopped to

thereafter assert that the record contains no sufficient evidence to support the findings of the jury thereon.

*Appeal from Davis District Court.*—D. M. ANDERSON, Judge.

WEDNESDAY, OCTOBER 18, 1916.

CONVICTION for the misdemeanor of practicing osteopathy without first having obtained and filed with the county recorder a certificate of the state board of medical examiners authorizing defendant to practice.—*Affirmed.*

*Henry C. Taylor* and *Buell McCash,* for appellant.

*George Cosson,* Attorney General, *John Fletcher,* Assistant Attorney General, and *Thomas A. Goodson,* County Attorney, for appellee.

SALINGER, J.—I.   The indictment charges that the defendant—

"did practice osteopathy in Davis County, State of Iowa, without first having obtained a certificate to so practice from

1. PHYSICIANS AND SURGEONS: practice of osteopathy: indictment in language of statute: sufficiency.

the state board of medical examiners of the state of Iowa permitting him to practice osteopathy in said county and state, and did as aforesaid . . . practice osteopathy in said county and state without filing a certificate from the state board of medical examiners of the state of Iowa permitting him to practice osteopathy, for record with the county recorder of Davis County, Iowa, the said defendant not being embraced in any of the exceptions contained in the law, and not permitted to practice osteopathy without first obtaining a certificate from the state board of medical examiners, and filing the same for record with the county recorder of Davis County, Iowa, contrary to and in violation of law."

The appellant contends it was error to overrule a demurrer to this indictment, which demurrer asserts that

the indictment charges a crime•not defined or individuated
by statute, and charges same by way of mere legal conclu-
sion. He asserts, in motion in arrest of judgment, that the
indictment does not charge the crime of practicing osteop-
athy, "as defined by the statute." He presents in his brief
points that an indictment is demurrable where it charges
the crime in the words of a statute which is itself a mere
legal conclusion, and which neither defines nor individuates
the crime.

.     We agree with appellant, and adhere to cases like *State
v. Chicago, B. & P. R. Co.,* 63 Iowa 508, and *State v. Stroud,*
99 Iowa 16. The first is that, where the acts charged may,
under certain circumstances, be lawful, and these circum-
stances are not negatived, the defect is not cured by an alle-
gation that the acts charged were wilfully and unlawfully
done. The last holds that, where it is made an offense to
wilfully disturb a congregation, a naked allegation that
defendant disturbed one by loud talking and laughing is not
aided by adding that it was done contrary to the statute.
We have no criticism to make upon *State v. Butcher,* 79
Iowa 110, approved in *State v. Bauguess,* 106 Iowa 107, at
108, that it is not sufficient to state in an information merely
that defendant "did commit the crime of unlawfully and
wilfully disturbing a school taught by." We adhere to
cases like *State v. Parsons,* 54 Iowa 405, and *State v. McKin-
ney,* 130 Iowa 370, 375 to 377, which follow *State v. Brandt,*
41 Iowa 593, at 612, and hold, in effect, that an indictment
which merely charges the unlawful conversion of public
money, and fails to allege some one of the essentials of the
crime of embezzling moneys, is fatally defective. We agree
that an indictment for robbery which does not allege who
owned the property taken is insufficient. *State v. Wasson,*
126 Iowa 320, at 322. And that an indictment for obtaining
by false pretenses must state who owned the property alleged
to have been thus obtained. *State v. Clark,* 141 Iowa 297,
at 299, 300. And with *State v. Jamison,* 110 Iowa 337, at

341, that, where it is the offense to *use* false weights, an indictment which charges the unlawful and fraudulent *keeping* of such weights is insufficient, though it be further alleged that such keeping was contrary to and in violation of law. The statute considered in *State v. Potter*, 28 Iowa 554, declares that:

" 'If any two or more persons conspire or confederate together with the fraudulent or malicious intent wrongfully to . . . do any illegal act injurious . . . to the administration of public justice, they are guilty of conspiracy.' "

We have no fault to find with the decision in the *Potter* case, that an allegation that defendants conspired and confederated together with fraudulent intent to defeat the enforcement of a prohibitory liquor law with money and other unlawful means to prevent the grand jury from finding and presenting bills of indictment for violation of said law contrary to the statute, is insufficient because it fails to state in what manner money was intended to be used, and to specify more particularly "the other unlawful means."

We are content with the holding of *State v. Clark*, 80 Iowa 517, wherein it is held by a divided court that an indictment which charges that defendant did "make an assault upon one H with intent to strike and bruise, and did inflict upon the person of said H a great bodily injury," is insufficient to charge an assault with intent to commit great bodily injury, since it does not in words charge more than an intent to strike and bruise, which intent may exist in the case of a simple assault or assault and battery, and the great bodily injury alleged to have been committed may have been in excess of the attempt.

And so of *State v. Murray*, 41 Iowa 580, which holds an information insufficient that "defendants are accused of the crime of assault for that the defendants (time and place stated) did wilfully and maliciously assault one Bridget McCoy, contrary to the statute in such cases made and pro-

vided, and against the peace and dignity of the people of said state,'' it being held that there is a failure to state the acts which make up the offense charged, and that the information is no more than accusing of the commission of a crime by its technical name merely. Though approving all the foregoing, we are unable to see their relevancy in the instant case.

2

*State v. Dankwardt,* 107 Iowa 704, sustains an indictment for bribery which substantially follows the statute, and is not more specific nor less a conclusion than the indictment in this case. So of *State v. Beebe,* 115 Iowa 128, at 130, an indictment for keeping a house of ill fame. So of *State v. Johnson,* 114 Iowa 430, an indictment for assault with intent to commit rape, and *State v. Bauguess,* 106 Iowa 107, an indictment for lewdness; and so of *State v. Bair,* 92 Iowa 28, at 29, 30, an indictment for violating the statute requiring a license of itinerant vendors of drugs. We think, too, that indictments charging the violation of the statute under which defendant is being proceeded against, and which were as vulnerable as the indictment at bar, have been sustained. See *State v. Kendig,* 133 Iowa 164, 166; *State v. Wilhite,* 132 Iowa 226.

As we view it, *Wilhite's* case holds that the fullness for which appellant contends would constitute setting out with more particularity than is essential. We think, too, that *State v. Edmunds,* 127 Iowa 333, and *State v. Corwin,* 151 Iowa 420, 421, cited by appellant, sustain the indictment at bar.

In *State v. McAninch,* 172 Iowa 96, 97, we considered an indictment under Section 2579, which defines practicing medicine, surgery or obstetrics, and defines a physician to be a person ''who shall publicly profess to be a physician, surgeon or obstetrician, and assume the duties, or who shall make a practice of prescribing or of prescribing and furnishing medicine for the sick, or who shall publicly profess to cure or

heal;'' and Section 2580, that it shall be a misdemeanor for any person to ''practice medicine, surgery or obstetrics in the state without first having obtained and filed for record'' a prescribed certificate. We sustained the indictment, which charged that defendant, between stated dates, and in a stated county, ''did wilfully and unlawfully assume the duties of a physician, and make a practice of treating persons afflicted with disease, and did then and there, wilfully and unlawfully, publicly profess to treat, cure and heal persons afflicted with disease, by a system of treatment called 'chiropractic,' without first having obtained from the state board of medical examiners of the state of Iowa, and recorded in the office of the county recorder of Jasper County, Iowa, a certificate authorizing the said (defendants) to practice as such, contrary to and in violation of law.''

3

*State v. Edmunds*, 127 Iowa 333; *State v. Corwin*, 151 Iowa 420, and *State v. Zechman*, 157 Iowa 158, determine, as we view it, that the indictment at bar is not bad for duplicity.

II.    We agree with appellant that statutes regulating the practice of medicine and providing penalties for failure to comply with conditions imposed upon such practice include all who practice the art of healing, whatever the therapeutic agency employed, and that, therefore, one practicing osteopathy is, at least for the purposes of such statutes, practicing medicine. *Bragg v. State* (Ala.), 32 So..767; *State v. Gravett* (Ohio), 62 N. E. 325.

We agree, for the sake of the argument, with the contention that statutes for the purpose of enforcing conditions upon the right to practice medicine are held by the following cases to include almost any profession to heal, or action for the purpose of healing: *State v. Corwin*, 151 Iowa 420; *State v. Zechman*, 157 Iowa 158; *Ligon v. State* (Ala.), 39 So. 662; *State v. Heath*, 125 Iowa 585; *State v. Edmunds*, 127 Iowa

333; *Little v. State* (Nebr.), 84 N. W. 248; but are at loss to understand what materiality the claim or concession have, unless it be because of a contention that laws which put restrictions upon the practice of medicine are void.

2

It is presented that a law is unconstitutional which is arbitrary in its classification and does not operate uniformly upon members of the same class. From this is deduced a point made in motion in arrest of judgment, that Section 2583-d, Supplement to the Code, 1913 (29 G. A., Chapter 158), is unconstitutional because in violation of Section 1 of the 14th Amendment of the Constitution of the United States, and of Article 1, Section 6, Constitution of Iowa. In support of the contention, we are cited to *State ex rel. Board v. Cooley* (Minn.), 58 N. W. 150, and *Nichols v. Walter,* in the same court, 33 N. W. 800, which condemn statutes made specially applicable to completing and furnishing a courthouse and city hall building in Minneapolis, on the ground that the act violates constitutional provisions against special· legislation, and thus is not uniform in operation throughout the state.

*Sutton v. State* (Tenn.), 36 S. W. 697, condemns as unconstitutional, for being unnatural, arbitrary and capricious, an act which makes it a misdemeanor, in counties having a certain population according to the census, for the owner of live stock to allow the same to run at large, there being no reason why it should not have also applied to all counties now or thereafter having the same population.

*Ex parte Jentzsch* (Calif.), 44 Pac. 803, holds that a statute which makes it a criminal offense for barbers to conduct their business on Sundays·or holidays· after 12 o'clock, is not a proper exercise of the police power, and violates a constitutional provision against local or special laws for the punishment of crime, in cases where a general law can be made applicable.

*Yick Wo v. Hopkins*, 6 Sup. Ct. Rep. 1064, avoids an ordinance of San Francisco which gave the board of supervisors authority at discretion to refuse permission to carry on laundries except where located in buildings of brick or stone. In that case, appellants were refused permission, and were thereafter convicted of violation and imprisoned; and it was held that the ordinance was a breach of the 14th Amendment, because it empowered a man or body of men, at absolute and unrestrained discretion, to give or withhold permission to carry on one's lawful business in any place.

*State v. Garbroski*, 111 Iowa 496, holds a statute void which exempts those who served in the Union army from peddler's license, required of all others.

*State v. Haun* (Kan.), 59 Pac. 340, condemns an act singling out laborers for the benefit of a penalty on nonpayment of wages.

In *Bailey v. People* (Ill.), 60 N. E. 98, it was held that a statute was unlawful, discriminatory, and deprived of property without due process of law, in that it regulated the number of people a lodging-house keeper might permit to sleep in one room, without putting under the same provision keepers of other houses of entertainment, such as inns, hotels and boarding houses.

*Gulf, C. & S. F. R. Co. v. Ellis*, 17 Sup. Ct. Rep. 255, nullifies a Texas statute providing that railroad companies failing to pay claims less than $50 for labor, damages, overcharges on freight, or for stock killed, within 30 days after presentation, should be liable for an attorney fee, as depriving the companies of the equal protection of the law.

In *State v. Mitchell* (Me.), 53 Atl. 887, there was condemned a legislative discrimination in a hawkers and peddlers' statute between those who own and pay taxes on stock in trade to the amount of $25, and those who pay a less tax on their stock in trade, the first being exempted from a license which the last were required to pay.

3

Section 2583-d, Supplement to the Code, 1913, so far as germane, to the present controversy, provides a penalty for those who "shall practice osteopathy, surgery or obstetrics in the state without first having obtained and filed for record the certificate herein required."

We are not persuaded by anything thus far commented upon that this statute is unconstitutional for any reason; and on this point, the appellant is a house divided against itself. He contends that the statute is unconstitutional, and cites what has been commented upon, which does not sustain him, and, on the other hand, presents that which refutes him.

In *Bragg v. State* (Ala.), 32 So. 767, it is held that a statute providing that no person shall practice medicine in any of its branches or departments without a certificate of qualifications from an authorized board of medical examiners, and imposing a penalty for practicing medicine without such certificate, is not unconstitutional.

*Little v. State* (Nebr.), 84 N. W. 248, is that one who, without complying with the statute establishing a state board of health and prohibiting the practice "without a license" of medicine, surgery and obstetrics, practices medicine without a license, is liable to the penalty prescribed by the statute.

In *State v. Heath*, 125 Iowa 585, we hold that statutes which require practitioners to secure a certificate from the state board of medical examiners, and pass an examination in those matters pertaining to the school of medicine which the applicant proposes to practice, are reasonable and valid.

In *State v. Corwin*, 151 Iowa 420, the holding is that conditions imposed on the right to practice as a physician, and the like, do not constitute an unreasonable exercise of the legislative power; and in *State v. Edmunds*, 127 Iowa 333, 334, we hold that, though the license imposed on itinerant physicians by Code Sec. 2581 should be treated as a tax, that statute is not in conflict with a constitutional provision that

every law imposing a tax shall state its purpose, and the object to which it is to be applied.

In *State v. McAninch,* 172 Iowa 96, 100, Par. II, we over-rule a demurrer presenting that the statutes here being pro-ceeded under are repugnant to the Bill of Rights, the Consti-tution of the United States, and the Constitution of the state.

4

But there is an attempt to present a point, which it may be conceded the foregoing have not dealt with. The argument is this: Practicing osteopathy is practicing medicine; Section 2579, Code, 1897, exempts from the penalties of the statute upon which the indictment rests, "students of medicine" who have stated qualifications (which defendant has), if they prescribe "under the supervision of precep-tors," or give gratuitous services "in case of emergency." It is said that, if defendant is denied this exemption, there is an arbitrary, and therefore void, discrimination between osteopaths, whom the law regards as practicing medicine, and others who are also practicing medicine.

2. CONSTITUTIONAL LAW: rules of construction: reluctance to invalidate law: noninterested party.

Axiomatic law refutes this contention. Courts avoid in-validating statutes unless the question whether they are valid arises for, and demands, decision. In the instant case, defend-ant insists throughout that the treatments given by him were not an application of the science of osteopathy, but were the application of a distinct system, which he calls "eyelet dilita-tion." The statute exempts neither students nor practitioners of "eyelet dilitation," and none but "students of medicine, surgery or obstetrics," and there is no claim that said dilita-tion is any one of these three. It will be time enough for us to pass on whether a statute unduly discriminates against practitioners of osteopathy when someone presents the point who does not deny that he practices osteopathy.

Again, while defendant may have given gratuitous treat-ments, it does not appear that they involved a "case of emer-

gency.'' And if that be passed, it is still undisputed that he

3. PHYSICIANS
AND SURGEONS:
certificate of
authority: ex-
emptions of stu-
dents: scope.

gave many treatments in consideration of $2 per treatment. Finally, he was not a student at all, but a practitioner. If, for the sake of argument, he be treated as a student, the evidence shows clearly that he was not ''a student . . . prescribing under the supervision of a preceptor.''

Dr. Baughman is a qualified and duly certified practitioner of osteopathy, living and practicing in Burlington. He had some relation to the treatments which defendant gave at Pulaski. Upon evidence showing that relation, defendant requested, and was denied, an instruction that, under the law, any person who is a student of medicine, surgery or obstetrics, which includes osteopathy, and who has had not less than two courses of lectures in a medical school of good standing, has the right to practice medicine or osteopathy under the supervision of a preceptor, and that, therefore, if it should be found that defendant practiced under the supervision and preceptorship of Dr. Baughman, he should be found not guilty. The evidence for which it is claimed that it bases the refused instruction is this:

Lantz took treatments; Allen took eleven; Gleason was treated; and Bussey and his son and Blough and Blough's father: for all of these, $2 a treatment was paid. Baughman and his wife were treated, and it does not appear that payment was made for this, and it may be assumed it was charity treatment. As said, Dr. Baughman, of Burlington, was practicing in Burlington while these treatments were being given in Pulaski. Dr. Baughman called at the home of his brother in Pulaski and treated the brother and the brother's wife. He went to Pulaski on June 24th. Defendant then asked him about the treatment of some of his patients. They had a conference as to the treatment of Dr. Baughman's brother and the brother's wife, and that of Allen, Bickle, Lamb, Blough, Lillie Blough, Gleason, Bussey and son. Lantz testified Dr. Baughman never examined him, and was never present when witness

received treatments from defendant. But Dr. Baughman says he had given defendant authority to treat "all these persons" under his supervision; that they talked about their troubles and what they needed, and the doctor told defendant he thought defendant could go on under the statute. The doctor returned to Pulaski on July 3d, and had a further conference with defendant on July 3d and 4th, and, in the meantime, defendant reported the progress of the cases. The doctor had talked with defendant several times before witness went to Pulaski; but when he did go to Pulaski, he and defendant conferred about these who were witnesses for the State and others, and the doctor examined some of the patients with defendant and made no charge to them for examination. Dr. Baughman concludes with the statement that defendant was treating under his direction and supervision, and that he approved of defendant's system because he knew him and knew of his efficiency as an osteopath.

Defendant says he wrote the state board, and he understood that, if he practiced in Iowa, he would have to practice under someone who had a permit; that Dr. Baughman had a permit, and defendant thought he had a right to come into the state if he acted in consultation with the doctor; that he first called the doctor by phone about treating these patients; that, under the supervision of Dr. Baughman, he treated those who testified for the State, but these had been the doctor's patients; that he treated none of the patients at Pulaski without consulting Dr. Baughman, and did so because defendant didn't want the responsibility. That he consulted with the doctor by letter, telephone or in person before he treated any patient; that, in treating Allen, it was done under the supervision and direction of Dr. Baughman; that letters from defendant induced the doctor to come to Pulaski on June 24th, and that, when he came, defendant went over the symptoms of his patients with him; that, while in Pulaski, he had communication with Dr. Baughman; that the doctor wished him to look after his brother's wife, his sister and some other

patients; that he first talked with the doctor over the phone before beginning treatments; that he was reluctant; that the doctor urged him as a matter of mercy to see the sister, Joe Blough, and some others; and that, when he consulted with Dr. Baughman, the latter said that the treatments defendant was giving met with the doctor's approval.

That this presents the relation of consultants on occasion and occasional advice and direction is true. But, as matter of law, the relation was not that of "a student prescribing under the supervision of a preceptor." Hence, the offered instruction was rightly refused.

Under Instruction No. 8, the court withdrew the evidence concerning the relations between defendant and Dr. Baughman. The reasons for the withdrawal are stated. They are that the law regulating the practice of osteopathy does not give authority to one not certified, to practice under the direction of another who is regularly licensed. Let it be conceded that this is not the correct reason. But defendant is in no position to avail himself of such error, if error there be. He took no exceptions, in the method provided by statute. He merely excepted to the giving of each and all of the instructions given, and, in the motion for new trial, repeated that exception without any claim that anything was overlooked with reference to exceptions, or any attempt to comply with the statute on exceptions.

4. TRIAL: instructions: objections and exceptions: failure to specifically except: effect.

5

We fail to see the materiality of citing *McCracken v. Webb*, 36 Iowa 551, at 554, 555; *Aultman v. Lee*, 43 Iowa 404, 405; and *Preston v. Dubuque & P. R. Co.*, 11 Iowa 15, at 17. The first does hold that the giving of an instruction which, though correct in one point of view, would, if viewed in another and more natural one, have a tendency to mislead, should not be approved. The second holds that a judgment will be reversed for the giving of an instruction which was

not applicable to. the evidence, and has a tendency to mislead the jury. In the last, it is held that an instruction technically correct may be ground for reversal, if misleading and susceptible to an erroneous construction. The error condemned is an instruction which gave a railroad company a right or privilege not conferred by statute, "and, as a consequence, increases their liability beyond the proper legal measure. In other words, it makes them pay for that which they had no right to take." We are at loss to understand what instruction given, passing the point of want of exception, comes within the rule of the cases cited.

III. Appellant presents that the verdict is not sustained by the evidence. Three of the cases cited in support do not support the contention.

5. PHYSICIANS
AND SURGEONS:
certificate of
authority:
practicing without certificate:
evidence.

State v. Ostrander, 18 Iowa 435, 459, merely defines what in law constitutes proof beyond reasonable doubt, and approves an instruction.

State v. Cohen, 108 Iowa 208, at 213, is a criticism of an instruction which defines a reasonable doubt as one that the jury are able to give a reason for.

State v. Red, 53 Iowa 69, at 71, is not authority for the claim that we must determine whether the evidence proves guilt beyond a reasonable doubt, but that, although there be a preponderance, there may still be a reasonable doubt upon which the jury may acquit.

But State v. Hilton, 22 Iowa 241, at 242, State v. White, 98 Iowa 346, at 352, State v. Reinheimer, 109 Iowa, at 624, State v. Pilkington, 92 Iowa 92, at 96, State v. Woolsey, 30 Iowa 251, State v. Wise, 83 Iowa 596, State v. Tomlinson, 11 Iowa 401, do hold, in effect, that a conviction may be set aside by the Supreme Court where it is clearly against the weight of the evidence.

And we have recently re-affirmed this rule of appellate review. See State v. Saling, 177 Iowa 552.

Defendant asserts, in his motion in arrest of judgment,

and elsewhere, that the evidence fails to support the allega-
tions of the indictment; and that there is no evidence that
there was not issued to defendant a certificate by the board
of medical examiners for the state of Iowa to practice osteop-
athy in the state.   We judge that this more specific conten-
tion is not being pressed on this appeal, and we do not·well
see how it could be, in the light of the evidence on that
specific point.

As to the general complaint, the court charged that de-
fendant was competent to practice, but that the charge was
the failure to have the certificate required by law, and failing
to have the same filed for record, as required by law.  It was
charged, in effect, that defendant must be acquitted unless
the jury found that he practiced osteopathy without first ob-
taining such certificate, and having it recorded.   Right or
wrong, this is the law of the case, because, as seen, defendant
took no exceptions.   This, however, does not preclude him
from urging that an instruction requested by him should have
been given; and if that be so, he might maintain error, even
though all the instructions given were correct, unless they
gave what he asked.   In Instructions 2 and 3, requested and
denied, the court was asked, in effect, to charge that it was
for the jury to say whether or not defendant had been prac-
ticing osteopathy.   The court, in effect, gave such charge.
Hence, the sole question on this head is whether the record
shows that the conviction is against the clear weight of the
evidence.   Whether the statute was so violated is the ordinary
question of fact for a jury.   So says *State v. Heath,* 125 Iowa
585, cited by defendant.

It is true, defendant testifies he claims that osteopaths
would not treat Mrs. Baughman as the evidence showed he
had treated her; that he claims osteopaths didn't use a pres-
sure on the nerves to cure disease; that he was using "eyelet
dilitation," and not osteopathy; that his system, termed "eye-
let dilitation," is entirely separate and distinct from "ortho-
dox osteopathy."   But the jury had before it what defend-

ant's treatments in fact were, and could find from that description alone that, though the treatments may not have been "orthodox osteopathy," yet it was an application of osteopathic science. Defendant himself describes osteopathic treatment to be the doing of things which the evidence shows his treatments consist of, and that both his treatments and osteopathy aim to induce a flow of blood to the affected part.

He was a qualified osteopath, and had practiced that science for some time. He wrote the state board and enclosed an examination fee, having in mind taking the examination for a certificate to practice osteopathy. He wrote a lawyer that he intended making a fight on the law, among other reasons, because "the other osteopaths are dissatisfied with the law;" and his witness, Dr. Baughman, says he approved defendant's system because he knew defendant "and knew of his efficiency as an osteopath."

To the patient Allen, defendant termed the treatment given either "osteopathic" or "osteopathy" or "osteopathic treatment."

Defendant, by his offered instructions, declared it was a question for the jury whether osteopathic treatment had been given. He can in no view, even if he had taken proper exceptions, complain that the court took the same view and submitted that question to the jury. We think that, while the jury might have found that the treatments were not osteopathic, we cannot disturb their findings that they were an application of the science of osteopathy.

6. TRIAL: instructions: requested instructions: estoppel.

The judgment is—*Affirmed.*

EVANS, C. J., LADD and GAYNOR, JJ., concur.