STATE OF IOWA, Appellant, v. KINDY OPTICAL COMPANY, Appellee.

No. 41807.

MAY 9, 1933.

REHEARING DENIED NOVEMBER 17, 1933.

Edward L. O'Connor, Attorney-general, and Gerald O. Blake and John Fletcher, for appellant.

Gamble, Read & Howland, for appellee.

ANDERSON, J.—The appellee, Kindy Optical Company, is a ˜Delaware corporation organized for the purpose, among other things, as shown by its articles, "to manufacture, purchase and sell

optical goods and glasses of every character, mathematical and scientific instruments, photographic supplies, and materials, and carry on the business of opticians and dealers in optical goods and allied lines." Its practice has been, and is, to establish, equip, maintain, and operate offices and places where licensed optometrists may carry on the practice of optometry, and at the time of the commencement of this action was maintaining and operating such an office or place of business in the city of Des Moines, under the management of one W. O. Jensen, who was a licensed optometrist in the state of Iowa; the said office or place of business being located at Younker Bros. Department Store in said city. The said Kindy Optical Company, appellee, is not licensed to practice optometry within the state of Iowa and is not such a person or entity as can engage in the practice of the profession of optometry in the state of Iowa.

W. O. Jensen, a licensed optometrist, was employed by the appellee for several years to conduct like business, and before coming to Des Moines conducted and managed, as an employee, similar business for the appellee in Minneapolis, Duluth, Kansas City, Detroit, Pittsburg, and Sioux City. Prior to going to Des Moines, Jensen was employed by the appellee as optometrist and manager of an optical department in Davidson Bros. Department Store at Sioux City, Iowa. He was sent by his employer to Des Moines on August 15, 1931, to take charge of an optical department owned by the appellee in Younker Bros. Department Store and was to open the department on that date. There was some indication of some trouble with the state authorities over the establishment and operation of the business, and the opening thereof was delayed until the 17th day of August, at which time the office or department was opened under the management of Jensen and continued in operation several months thereafter.

On the 17th day of August, 1931, an alleged lease was entered into between the appellee and Jensen under the terms of which the appellee purported to lease to Jensen certain examination rooms or space located in the store building occupied by Younker Bros. in the city of Des Moines. In this instrument the lessor, the Kindy Optical Company, agreed to pay the lessee, W. O. Jensen, the sum of $281.66 per month. The so-called lease provided that all eye examinations should be under the exclusive control of the lessee.

On the same day the Kindy Optical Company and Jensen en-

tered into a written contract of employment, under the terms of which the appellee agreed to employ the said Jensen, and the said Jensen agreed to remain in the employ of appellee, for a period of two years. This instrument provided that the said Jensen should be the manager of the optical department of the Kindy Optical Company located in Younker Bros. store building in Des Moines, Iowa, "but the second party (Jensen) shall in all things be subject to the control and direction of the proper officers of the first party" (Kindy Optical Company). This contract further provided that all moneys derived from said business should be deposited in the name of the Kindy Optical Company in a bank selected by it and that all disbursements should be made by check drawn by the proper officers of the company. This contract provided a salary to be paid to Jensen of $240 per month and certain percentages.

Both of the above-mentioned instruments contained provisions permitting their cancellation or termination upon giving seven days notice.

All of the machinery and equipment installed and used in the business was the property of the appellee and all the accounts of the business were handled through the Younker Bros. store. The name of the appellee did not appear in any way in the business. The advertisements of the business appeared in the name of Younker Bros. They were prepared at the home office of the appellee in St. Paul and inserted in the newspapers and paid for by the appellee. Any money received by Jensen for eye examinations was to be deducted from the amount he was to receive under the alleged lease, or contract of employment.

The State of Iowa, appellant, instituted this proceeding, under the provisions of section 2519 of the 1931 Code, for the purpose of enjoining the defendant, appellee, from practicing or engaging in the practice of optometry in Iowa, alleging that it had not complied, and could not comply, with the provisions of title VIII of the 1931 Code (section 2438 et seq.).

The statutes material for our consideration in determining the issues here presented are as follows:

Section 2439. "No person shall engage in the practice of medicine and surgery, podiatry, 'osteopathy', 'osteopathy and surgery', chiropractic, nursing, dentistry, dental hygiene, optometry, pharmacy, cosmetology, barbering, or embalming as defined in the follow-

ing chapters of this title, unless he shall have obtained from the state department of health a license for that purpose."

Section 2574. "For the purpose of this title the following classes of persons shall be deemed to be engaged in the practice of optometry:

"1. Persons who employ any means other than drugs for the measurement of the powers of vision of the human eyes, and adapt lenses for aiding the same.

"2. Persons who allow the public to use any mechanical device for such purpose.

"3. Persons who publicly profess to be optometrists and to assume the duties incident to said profession."

Sections 2576 and 2577 prescribe the requirements necessary for the procurement of a license to practice optometry.

Section 2528. "The opening of an office or place of business for the practice of any profession for which a license is required by this title, the announcing to the public in any way the intention to practice any such profession, the use of any professional degree or designation, or of any sign, card, circular, device, or advertisement, as a practitioner of any such profession, or as a person skilled in the same, shall be prima facie evidence of engaging in the practice of such profession."

The defendant's contentions are: That it is not practicing optometry; that Jensen was the lessee of the plaintiff and was not under its supervision or control in the practice of optometry; that the defendant did not publicly profess to be an optometrist or to assume the duties incident to said profession; that if section 2574 of the Code can be construed to prohibit the defendant from operating its business in Des Moines, as it was operated, it is in contravention of the provisions of both the state and federal constitutions, and that there is no evidence in the record that the act complained of by the state was being carried on by the defendant at the time this action was tried.

It is shown by the record that the defendant did open an office or place of business in Des Moines and equipped the same for the practice of optometry. Following this it employed a licensed optometrist to manage and conduct said business. That the defendant itself did not and could not procure a license for the practice of optometry within the state of Iowa.

█ The defendant contends that there is no evidence in the record that the acts complained of were being carried on by it at the time of the trial. However, the record affirmatively shows that the conditions complained of existed at the time the action was commenced. And while the record shows that Jensen had been discharged from the employ of the defendant at the time of trial, there is no showing that a substitution was not made and another licensed optometrist was employed in his place. And the presumption prevails, without a showing to the contrary, that the condition and situation shown to exist at the time of the commencement of the action continues and was existing at the date of the trial. The case of State v. Fray, 214 Iowa 53, 241 N.W. 663, 81 A.L.R. 286, answers the contentions here made. On page 59 of the opinion we used this language:

"Some stress is laid by appellant upon the fact that the illegal acts charged against the defendant were all in the past * * * and that the complaint does not show any threatened act in the future. The complaint is drawn in the present tense. Such is the form of the statute. The complaint speaks as of the date of its filing and continues to speak until the date of the decree. The purpose and effect of the injunction are to stop an alleged existing practice. When such existing practice is established, it will be presumed to be in accord with the intent of the perpetrator, and the practice and the intent will be presumed to continue until the contrary is made to appear. This is particularly so if the existing practice is in the nature of a nuisance and is a willful violation of law. The statutory right to an injunction in such case is not conditioned upon future threats. The plaintiff is entitled to the injunction upon a showing of the existing practice; and this is so even though the defendant should suddenly desist and should profess repentance and a purpose to desist for the future."

This ruling was approved and followed in a later case of State v. Stoddard, 215 Iowa 534, 245 N.W. 273.

It is true that the name of the defendant did not appear in connection with the business. The business was advertised in the newspapers in the name of Younker Bros., but the record shows that these advertisements were all prepared by the defendant, inserted in the newspapers, and paid for by the defendant; that the

guaranty known in the record as Exhibit 6 was the guaranty of defendant company. That guaranty was as follows:

"In all cases there is a readjustment of the nerves and muscles of the eyes after they have been fitted with glasses. A week or ten days is sometimes required in which to reach a restful balance. If results are not entirely satisfactory after ten days' time, consult us. Within a period of three months any necessary change in lenses or mounting is made without charge."

This guaranty was a part of the advertising plan of the defendant company. The ownership and control of the entire equipment of the Des Moines office is in the defendant, and not in its employee. Its officers determined all its policies.

The subtle attempt on the part of the defendant to evade the provisions of the Iowa statutes in reference to the practice of optometry, by employing a licensed optometrist to conduct its business, and by the execution of the alleged lease with its employee, is too patent to appeal strongly to a court of equity. Younker Bros. probably should have been made a party defendant in this action, as that institution had no more right to hold itself out to the public as being engaged in the practice of optometry than did the defendant.

The execution of the so-called lease between the defendant and its employee, Jensen, in connection with the contract of employment between the same parties, was also a sham and fraud and a too evident plan, purpose, and intent to evade the provisions of the statutes herein referred to. It is true that the name of the defendant did not appear publicly in connection with the business, but the record shows without controversy that the business was in fact owned and operated by the defendant company. The defendant company controlled the conduct and policies of the business. Jensen was simply its employee on a stipulated salary. The so-called lease between Jensen and the defendant, under the terms of which the defendant, as lessor, was to pay Jensen, as lessee, $281 per month, was only a clever attempt to change the character of Jensen from an employee to a lessee, and does not change the fact that Jensen was an employee of the defendant company.

The defendant company could not conduct a business without a license. It could not obtain a license, and we can conceive of no reason why it should be permitted to continue to conduct a busi-

ness under the license of an optometrist. We hold therefore that the defendant company was and is engaged in the practice of optometry and that it is so engaged in violation of the statutes of this state.

The case of State v. Bailey Dental Company, 211 Iowa 781, 234 N. W. 260, is support for the foregoing conclusion, and that case follows and refers to In re Application of Co-operative Law Company, 198 N. Y. 479, 92 N. E. 15, 32 L. R. A. (N. S.) 55, 139 Am. St. Rep. 839, 19 Ann. Cas. 879, and also People v. State Board of Dental Examiners, 85 Colo. 321, 275 P. 933, in which cases the questions here under consideration were argued at length; both of the cited cases holding that a corporation had no right to practice dentistry nor to employ dentists to practice in its name.

To the same effect was the holding of the Colorado court in State Board v. Savelle, 90 Colo. 177, 8 P. (2d) 693, 697, in which the court held that:

"The practice of dentistry under the name of a corporation not licensed and not entitled to a license for such purpose is unlawful. 'Dentistry is a profession having to do with public health, and so is subject to regulation by the state. The purpose of regulation is to protect the public from ignorance, unskillfulness, unscrupulousness, deception and fraud. To that end the state requires that the relation of the dental practitioner to his patients and patrons must be personal'."

To the same effect was the holding in Winslow v. Board, 115 Kan. 450, 223 P. 308, 309.

We might suggest that there is no difference, under our Code, in the law applicable to the practice of dentistry and optometry, and that the general rules laid down by the courts are alike applicable to these as well as all other of the learned professions.

In the case of State Board v. Miller, 90 Colo. 193, 8 P. (2d) 699, we find a case which in its facts is very similar to the one at bar, except in that case the advertisements were generally in the name of a licensed employee, and in that case the court held that the advertisements were false and misleading; that the licensed operative was not engaged in the practice of his profession personally, but that he was an employee of a company who had no right to practice dentistry. In that case, as in this, there was the subtle suggestion that the supply company was the employee's landlord, but the

1164

Supreme Court of Colorado held that such situation did not change the real facts existing, and that court held that the relationship of landlord and tenant, in the common acceptance of the term, did not actually exist, and we make the same holding and ruling in the present case.

In the Winslow v. Kansas Board case, supra, the Kansas court said:

"Dentistry is a profession having to do with public health, and so is subject to regulation by the state. The purpose of regulation is to protect the public from ignorance, unskillfulness, unscrupulousness, deception, and fraud. To that end the state requires that the relation of the dental practitioner to his patients and patrons must be personal."

The same comment may be made as to an optometrist, and under the record in the case at bar there could be no personal relation between the practitioner, Jensen, and his patrons.

The Supreme Court of Minnesota, in In re Otterness, 181 Minn. 254, 232 N. W. 318, 73 A. L. R. 1319, held that an attorney practicing law under agreement with a bank to pay him an annual salary, the fees earned by him to become a part of the income of the bank, was guilty of unprofessional conduct, and that the bank was in fact practicing law.

It is admitted by the defendant that the state has a right to require the licensing of optometrists and has the right to exclude any individual from practicing such profession unless he has met the statutory qualifications and obtained a license from the state. There can be no question but what the state has such right under the police power. And statutes in this and other states requiring certain qualifications and the procurement of licenses by members of the learned professions have been universally held constitutional. New Jersey Photo Co. v. Schonert, 95 N. J. Eq. 12, 122 A. 307; State v. Hueser, 205 Iowa 132, 215 N. W. 643; Price v. State, 168 Wis. 603, 171 N. W. 77; Graves v. Minnesota, 272 U. S. 425, 47 S. Ct. 122, 71 L. Ed. 331; State v. Edmunds, 127 Iowa 333, 101 N. W. 431; State v. Corwin, 151 Iowa 420, 131 N. W. 659; State v. Baker, 212 Iowa 471, 235 N. W. 313; State v. Bailey, 211 Iowa 783, 234 N. W. 260.

Under the pronouncements in the cited cases it is unnecessary for us to discuss at length the contention of the defendant that the

statutes under consideration in this case are unconstitutional. There is no merit in such contention. And we hold that the statutes under discussion in this case are not in contravention of the provisions of the federal or state constitutions.

Section 2528, which we have quoted, provides that the opening of an office or place of business for the practice of any profession for which license is required, or the announcing to the public in any way the intention to practice any such profession, or the use of any sign, circular, or advertisement, shall be prima facie evidence of engaging in the practice of such profession.

In this case the defendant did open an office or place of business for the practice of optometry and announced to the public, through use of the name Younker Bros., its intention to practice such profession. Under this statute this is prima facie evidence that the defendant was engaged in the practice of such profession.

It follows from the foregoing discussion that the trial court was in error in its findings and rulings and in dismissing the plaintiff's petition. The injunction should have been issued in accordance with the prayer of plaintiff's petition. Reversal necessarily follows.—Reversed and remanded.

KINDIG, C. J., and EVANS, STEVENS, ALBERT, and KINTZINGER, JJ., concur.