**STATE of Iowa, Appellee,**

v.

**PLYMOUTH OPTICAL COMPANY et al.,
Appellants.**

**No. 54544.**

Supreme Court of Iowa.

Oct. 17, 1973.

Don C. Swanson of Beving, Swanson & Forrest, Des Moines, for appellants William E. Alshouse, O. D., Lon A. Wells, O. D., George L. Schreiber, O. D., Ralph L. Gill, O. D., Floyd E. Getman, O. D., Richard Phillips, O. D., Fred A. Martin, D. O., Victor C. Pohl, D. O., and Theodore J. Schloff, D. O.

John F. Davis of Lindgren & Davis, Des Moines, for appellant Plymouth Optical Co.

Richard C. Turner, Atty. Gen., and John A. McClintock, Special Asst. Atty. Gen., Des Moines, for appellee.

T. M. Whicher of Stewart, Hatfield, Klass & Whicher, Sioux City, for Duling Optical Co., amicus curiae.

Heard by MOORE, C. J., and REES, REYNOLDSON, HARRIS and McCORMICK, JJ.

REES, Justice.

This appeal is from a decree of the district court enjoining the corporate defendants, Plymouth Optical Company, Harvard Company, Richfield Company and Phoenix Company, from the practice of optometry in the State of Iowa, and permanently restraining and enjoining said corporations from entering into any agreement or arrangement whereby the profession of optometry would be practiced by any persons licensed to practice optometry in Iowa on any premises or in any establishment operated in Iowa under the name "Morgan Optical Company", or on any other premises, or in any other establishment owned or controlled by the corporate defendants named above.

The appellant doctors, namely, Bernard V. Morgan, William E. Alshouse, Lon A. Wells, George L. Schreiber, Ralph L. Gill, Floyd E. Getman, Richard Phillips, Fred A. Martin, Victor C. Pohl, and Theodore J. Schloff, appeal from the decree permanently enjoining and restraining them from practicing optometry on the premises operated under the name "Morgan Optical Company" or "Plymouth/Morgan Optical Company", or upon any other premises or in any other establishment owned or controlled by the appellant corporations. They further appeal from those provisions of the decree of trial court enjoining and restraining the defendant doctors from entering into any agreement or arrangement pursuant to which they would practice optometry as employees or servants of a person or corporation unlicensed to practice optometry in Iowa.

To achieve complete understanding of the issues in this appeal, it is necessary to make a rather full recitation of facts.

Plymouth Optical Company has its principal place of business in Minneapolis. Phoenix Company, Harvard Company and Richfield Company are all wholly owned subsidiaries of Plymouth Optical Company; are Iowa corporations, and were organized in June of 1964. At or about that time the three Iowa corporations purchased the assets and the tradename of Morgan Optical Company, properties owned by defendant Dr. Bernard V. Morgan, who operated several stores in Iowa. Dr. Morgan, the former owner, a licensed optometrist at that time, rented space for offices from the three corporations, and he and his associate doctors performed eye examinations and kept their own fees.

In June of 1964 an action was commenced entitled "State v. Morgan, et al.", in which the same corporations involved in the matter now before us, were joined, as well as the doctors then associated with Dr. Morgan. That action was brought seeking injunction against the corporations, and sought to revoke the licenses of the doctors. Such action was dismissed in September of 1966 for want of prosecution.

The instant action was commenced in February, 1967. A recast petition was filed April 22, 1970. However, prior to that time, in June of 1968, Dr. Morgan abandoned his rental arrangement with the defendant corporations, and all leases which he held with defendant corporations were terminated. The defendant corporations then leased the office space and the entire offices and businesses to Dr. William E. Alshouse, one of the defendants here, and who is a licensed optometrist and who had previously been associated with Dr. Morgan. Issues were joined by the filing of answers on the part of all defendants, and trial to the court resulted in the entry of the decree from which appeal is taken here.

The contractual arrangement between defendants Phoenix Company, Harvard Company, Richfield Company, and defendant Dr. William E. Alshouse is embodied in a written agreement dated June 12, 1968. The agreement provides that the lessors (corporations) agreed to lease to lessee (Dr. Alshouse) by separate lease all of the equipment and office furniture and leasehold improvements existing in each lo-

cation owned by plaintiff corporations in Iowa for a five-year term with a renewal option for an additional five years. The establishments are located in Des Moines, Ottumwa, Iowa City, Fort Dodge and Sioux City. Defendant corporations have at all times contended the relationship which had its genesis in the written agreement referred to between the corporations and Dr. Alshouse was that of landlord-tenant. The trial court, in its finding of facts, summarized the happenings provided for in the lease which would serve to work a default on the part of Dr. Alshouse, and would result in a termination of the agreement, namely: (a) a drop of ten percent or more in the volume of business; (b) the absence of a licensed optometrist or osteopath in any of the leased locations for 30 or more consecutive days; and (c) a breach of the separate agreement that Dr. Alshouse was required to make with Union Optical Plan, Inc., which the court found the evidence established to be owned by the same owners as Plymouth Optical Company. The agreement further provided that Dr. Alshouse was required to place in escrow for the benefit of the Phoenix, Harvard and Richfield Companies assignments of any employment contracts between Dr. Alshouse and any optometrists or osteopaths working in the various stores in Iowa. The assignments of employment contracts would vest in the corporate defendants all rights of Dr. Alshouse in the employment contracts in the event of the breach or default of Dr. Alshouse.

Trial court further found the evidence established Dr. Alshouse was required to execute in blank and place in escrow new signature cards executed by him for any bank accounts connected with the operation of the Morgan Optical business, and a document assigning or surrendering the use of the tradename "Morgan Optical Company". The court further found the agreement required Dr. Alshouse to retain the advertising firm of Jaffe-Naughton-Rich of Minneapolis, and required him to spend for advertising a minimum of ten percent of the gross volume of the stores for each year. The contract further contemplated Dr. Alshouse was required to retain the services of a bookkeeper recommended by the corporate defendants.

The corporate defendants state two propositions upon which they rely for reversal:

(1) That defendant doctors are not employees of the corporate defendants, and

(2) The trial court excessively and improperly restrained and enjoined the defendants.

They insist the agreement of June 8, 1968 between Phoenix, Harvard and Richfield Companies and Dr. Alshouse is not a contract of employment; that the method of operation of the optical business does not establish employment of the defendant doctors by the corporate defendants; that the method of practice of optometry by defendant doctors does not establish their employment by the corporate defendants, and that defendant doctors are not employees of Plymouth Optical Company. They further assert that evidence in the record concerning the quality of eye examinations given by defendant doctors is not relevant to the question of whether the doctors are employees of the corporation. In its finding of fact, the trial court found that as a result of the corporate direction and control over the defendants doctors, minimum eye examination standards were not being complied with and that the public was being misled into believing it was receiving an adequate eye examination and proper eye care, when in truth minimal standards for the examination of the human eye were not being met by the defendant doctors.

The defendant doctors assert three propositions upon which they rely for reversal:

(1) That they (the defendant doctors), in the practice of optometry, are in no manner under the supervision, control or direction of any of the defendant corporations.

(2) That defendant doctors have not violated the Iowa statutes relating to the practice of optometry.

(3) That said defendants should not be enjoined from the lawful practice of optometry on premises under the name "Morgan Optical Company", if all alleged elements of control are removed, and they assert the injunction ordered by trial court should be so modified.

By leave of court, Duling Optical Company, retail opticians, with five optical dispensaries in Iowa, has filed its brief *amicus curiae*. These opticians assert they are interested only in certain aspects of the trial court's conclusions of law, which aspects embrace provisions enjoining defendant doctors from practicing optometry on premises owned or operated by the corporate defendants.

The conclusions of law reached by trial court in which the *amicus curiae* expresses interest provides that the defendant corporations (Plymouth, Harvard, Richfield and Phoenix optical companies) should be permanently restrained and enjoined from the practice of optometry in the State of Iowa, and should be permanently restrained and enjoined from entering into any agreement or arrangement whereby the profession of optometry is practiced by the named defendant doctors in this case, or any other person or persons licensed to practice optometry in Iowa on any premises or in any establishments operated in Iowa under the name of "Morgan Optical Company", or on any other premises or in any other establishments owned or controlled by said defendant corporations.

Further, in its conclusions of law, the trial court found the defendant doctors should be permanently restrained and enjoined from practicing optometry on the premises and in the establishments operated in the State of Iowa under the name of "Morgan Optical Company" or "Plymouth/Morgan Optical Company", or upon any other premises or in any other establishments owned or controlled, or in any way connected with the defendant corporations. The decree of the court was in part based on such conclusions of law after an extensive finding of facts.

I. In its *conclusions of law, the trial court properly, in our judgment, determined that the practice of the profession of optometry in Iowa is governed by the provisions of chapters 147 and 154, the Code (then referring to the 1966 Code). Further, it properly, in our judgment, concluded the pronouncements of this court in State v. Kindy Optical Company, 216 Iowa .1157, 248 N.W. 332, at pages 335–336, are determinative of the issues in the matter now before us.

Conversely, defendants assert the holding of this court in State v. Ritholz, 226 Iowa 70, 283 N.W. 268, should control.

In *Kindy, supra,* in reversing the district court, which had refused to enjoin the defendant corporation from practicing optometry, this court said at page 1162 of 216 Iowa, at page 335 of 248 N.W.:

"The subtle attempt on the part of the defendant to evade the provisions of the Iowa statutes in reference to the practice of optometry, by employing a licensed optometrist to conduct its business, and by the execution of the alleged lease with its employee, is too patent to appeal strongly to a court of equity.

\*   \*   \*   \*   \*   \*

"The execution of the so-called lease between the defendant and its employee Jensen, in connection with the contract of employment between the same parties, was also a sham and fraud and a too evident plan, purpose, and intent to evade the provisions of the statutes herein referred to. \* \* \* The defendant company controlled the conduct and policies of the business."

In State v. Ritholz, *supra,* in which the court reversed the decree of the trial court granting an injunction, the court said, at

page 77 of 226 Iowa, at page 271 of 283 N.W.:

"The profession of the physicians and the business of defendants were separate and each operated independently of the other. We hold that the defendants did not practice optometry as defined by (statute).

"The trial court stated in the decree that the case was controlled by the case of State v. Kindy Optical Company, 216 Iowa 1157, 248 N.W. 332. The facts in the Kindy Case distinguish it from the case at bar. In the Kindy Case the licensed optometrist was an employee of the defendant. He was paid a monthly salary, and all of his earnings belonged to the company. The employee was *subject to the control and direction of the defendant in all things.* (emphasis added). The court found that through its method of advertising it specifically professed to carry on the business of optometry. * * *"

Further, at page 78 of 226 Iowa, at page 272 of 283 N.W., the court went on to say:

"Because of our holding that the relationship existing between defendants and the physicians was not one of employer and employee it will not be necessary to consider this proposition further than to say that we are satisfied with the conclusions reached in the cases of State v. Kindy Optical Company (citation) * * *, and reaffirm the intereptation placed on our statutes and the principles announced in those cases."

We are moved to observe that our reading of the record indicates to us the trial court was right in reaching its conclusions in the instant case. Too many factors in the record evidence militate against the defendants for the courts to have reached any other conclusion. The fact that the agreement between the corporate defendants and Dr. Alshouse requires Dr. Alshouse to keep licensed optometrists or osteopaths in all of the leased locations, and that failing so to do for a period of 30 days he would be contractually determined to be in default, and the fact that the contract between the corporate defendants and Dr. Alshouse required him to place in escrow assignments of the employment contracts between Dr. Alshouse and his employees, clearly, in our judgment, places the corporate defendants at least potentially in the practice of optometry.

Trial court was moved to single out and comment upon a very signal part of the record, which we believe most strongly militates against the defendants; that is, the testimony of Dr. Gary Gienger. Dr. Gienger testified he was a licensed optometrist, and was employed in the Iowa City Morgan store from November, 1968, until June, 1969. He testified he never at any time had any contact with Dr. Alshouse, presumably his employer, but that he was retained to work in the Iowa City store by Mr. Paul Mann, vice president of Plymouth Optical Company. This circumstance clearly, in our judgment, places the corporate defendants in the practice of optometry in this state.

Other pertinent circumstances include, but are not limited to, the facts that Dr. Alshouse was contractually obligated to employ the services of the same bookkeeper as the corporate defendants, who maintained joint control over all bank accounts. Further, he was required by the terms of his agreement to employ the services of an advertising agency selected by the corporate defendants, and to contribute to the cost of advertising, although he had no control over it whatsoever.

Another significant evidentiary fact was that even though counsel for the corporate defendants had never at any time been retained by Dr. Alshouse, two checks were in evidence payable to counsel for the corporate defendants bearing the signatures of Dr. Alshouse and the secretary, but Dr. Alshouse was not able to give any explanation therefor.

We are forced to conclude the trial court was correct in reaching its conclusion that the corporate defendants were unlawfully engaged in the practice of optometry in the State of Iowa. See State ex rel. Sisemore v. Standard Optical Co., 182 Or. 452, 188 P.2d 309; State ex rel. Loser v. National Optical Stores, 189 Tenn. 433, 225 S.W.2d 263. Ritholz v. Arkansas State Board of Optometry, 206 Ark. 671, 171 S.W.2d 410.

II. Defendants contend that evidence concerning the quality of eye examinations given by defendant doctors is not relevant to the question of whether the doctors are employees of the corporations.

While we might tend to agree in part with defendants in this respect, we find the record replete with testimony of witnesses tending to establish the standard of professional care afforded by the defendants was indeed suspect. We feel the trial court was amply justified in relying upon the evidence in this area when considered in the light of the entire record in reaching the conclusion the corporate defendants exercised improper dominion and control over the defendant doctors. The State has seen fit to regulate the practice of optometry, as it has the practice of medicine and dentistry under the aegis that it directly affects the public health and is a proper subject of legislative regulation and control. Inferentially, then, the practice acts, chapters 147 and 154, The Code, require the relation of the optometrist to his patients to be personal. We believe the trial court was justified in finding and concluding as it did in this area.

III. Finally, defendants assert the doctors involved should not be enjoined from the lawful practice of optometry on premises under the name "Morgan Optical Company" if all alleged elements of control are removed and the injunction should be so modified.

We do not view the order for the injunction as unduly inhibiting the professional activities of the defendant doctors. The order for the injunction directs only that they be restrained and enjoined from engaging in those practices which are unlawful, that is to say, from engaging in the practice of the profession of optometry as employees of corporations, and specifically, the corporations which are parties defendant in the matter before us. Clearly, any arrangement which comported with the pronouncements of this court in State v. Ritholz, *supra,* would be available to them as would the private practice of the profession of optometry. We cannot view the order and decree of the trial court for a writ of injunction as operating detrimentally to the defendant doctors if they engage in the practice of optometry as the practice acts contemplate.

Under our *de novo* review of the record, we conclude the trial court was correct in all respects in its findings, conclusions and decree, and the case is therefore affirmed.

Affirmed.